**SHIPBUILDERS COUNCIL OF AMERICA, et al.**

v.

**UNITED STATES of America, et al., Appellants.**

Nos. 88–5095, 88–5119.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 3, 1989.
Decided March 3, 1989.

Robert M. Loeb, Atty., Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., were on the brief, for federal appellants.

R. Craig Lawrence and George P. Williams, Asst. U.S. Attys., also entered appearances for appellants in No. 88–5095 and for appellees in No. 88–5119. John D. Bates, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellants in No. 85–5095.

Charles D. Tetrault, with whom Theodore W. Kassinger, Washington, D.C., was on the brief, for intervenor/appellant, Marathon LeTourneau Company.

Michael Joseph, with whom Thomas L. Mills and Tyler J. Wilson, Washington, D.C., were on the brief, for appellees.

Marie Louise Hagen also entered an appearance for appellees Shipbuilders Council of America, et al. in No. 88–5119.

Before RUTH BADER GINSBURG, SILBERMAN and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

As plaintiffs in the district court, the Shipbuilders Council of America and the Transportation Institute sought, in 1987, a declaration that the United States Customs Service (Customs) had erred, over eighteen months earlier, in ruling that a particular "dry-docking" operation could be performed using foreign barges without violating the Shipping Act of 1920 (Jones Act). The district court, as plaintiffs requested, granted the declaratory judgment and ordered Customs to issue no further rulings inconsistent with the court's declaration. Defendants in that action, the United States, the Secretary of the Treasury, and the Commissioner of Customs, joined on appeal by a private intervenor, challenge the district court order on the merits and also raise issues of justiciability and standing.

Plaintiffs, now appellees, assert that the particular "dry-docking" movement mentioned in their complaint is merely one example of the "controversy" they brought to court. Their plea is for judicial rejection of an administrative interpretation repeated in a series of rulings over the course of several years. They present no timely challenge to any specific agency adjudication, rulemaking, or other administrative order. In essence, they seek judicial attention and advice, the court's judgment on the merits of a line of current agency precedent. Because their complaint tenders no matter meet for judicial consideration and, moreover, fails to allege facts sufficient to show article III standing, they should have foundered in the first instance. Accordingly, we vacate the judgment of the district court and remand with instructions to dismiss the actions for lack of a judicially-cognizable complaint.

### I. BACKGROUND

The Jones Act provides in relevant part: No merchandise shall be transported by water, or by land and water, on penalty of forfeiture of merchandise ..., between points in the United States ... embraced within the coastwise laws, ...

in any other vessel than a vessel built in and documented under the laws of the United States and owned by persons who are citizens of the United States . . . .

46 U.S.C.App. § 883 (1982). To enforce this proscription, Customs promulgated regulations regarding "Coastwise Procedure," including section 4.80b(a):

A coastwise transportation of merchandise takes places [sic], within the meaning of the coastwise laws, when merchandise laden at a point embraced within the coastwise laws ("coastwise point") is unladen at another coastwise point, regardless of the origin or ultimate destination of the merchandise.

19 C.F.R. § 4.80b(a) (1988).

In September 1985, a United States corporation, Marathon LeTourneau Company (Marathon), arranged for the use of two Canadian submersible barges to "dry-dock" an oil drilling rig, so that the rig could be repaired. Marathon planned to station the rig in deep water adjacent to its ship repair yard, submerge the barges, and then raise them with the rig aboard, thus lifting the rig out of the water. The resulting "dry-docking" unit would be floated alongside the dock in the shipyard. There, workers would repair the rig without removing it from the barges. The unit would then float back to the deep-water point where the operation began, the barges would submerge, and the rig would dismount.

On September 12, 1985, Marathon sought approval from Customs for this projected dry-docking operation, inquiring whether the arrangement for the use of Canadian barges would violate the Jones Act. The next day, September 13, Customs ruled by telex:

Foreign-flag barge may be used as described without violating coastwise laws assuming drilling rig is loaded aboard and discharged from foreign-flag barge at same location in United States. Incidental shifting of barge within shypyard [sic] is not violative of coastwise laws, provided no cargo loaded aboard barge at one point is discharged from barge at different point in United States.

Customs regulations provide that each ruling letter "will be applied only with respect to transactions involving operations identical to those set forth in the ruling letter." 19 C.F.R. § 177.9(b)(4) (1988). No one, other than "the person to whom the letter was addressed," "should rely on the ruling letter or assume that the principles of that ruling will be applied in connection with any transaction other than the one described in the letter." Id. § 177.9(c). Such letters, however, can have precedential value for other parties or other activities: "In the absence of a subsequent change of practice or other modification or revocation which affects the principle of the ruling set forth in the ruling letter, that principle may be cited as authority in the disposition of transactions involving the same circumstances." Id. § 177.9(a).

Over eighteen months after the Marathon ruling, on April 7, 1987, counsel for the Shipbuilders Council of America, an association of United States shipbuilders, and the Transportation Institute, an association of operators of U.S.-flag vessels qualified to engage in coastwise trade, wrote a letter to Customs seeking reversal of the Marathon ruling, and overruling of a similar June 8, 1981 permission. Letter from Thomas L. Mills to Kathryn C. Peterson, Chief, Carrier Rulings Branch, Office of Regulations and Rulings, U.S. Customs Service (Apr. 7, 1987) [hereinafter April 7, 1987 letter]. The next day, April 8, 1987, the same two trade associations filed a complaint in the district court, citing the September 13, 1985 Marathon ruling and stating that the dry-docking operation had occurred "[d]uring 1986." Complaint for Declaratory Judgment at 2. The complaint sought: (a) a declaration that dry-docking operations like the one in Marathon's case violate section 883, and (b) an order directing defendants to issue no similar rulings in the future. Id. at 3.

On June 25, 1987, the district court ordered a stay of the civil action pending Customs' ruling on plaintiffs' April 7, 1987 letter. Customs dispatched a detailed response letter dated September 14, 1987. In that letter, Customs stated why it believed that the September 13, 1985 telex ruling,

and similar prior rulings, correctly interpreted the Jones Act. Letter from Edward B. Gable, Jr., Director, Carriers, Drawback and Bonds Division, U.S. Customs Service, to Thomas L. Mills (Sept. 14, 1987). Customs quoted section 4.80b(a), in which " 'coastwise transportation of merchandise' " is defined to take place " 'within the meaning of the coastwise laws, when merchandise laden at a point embraced within the coastwise laws ("coastwise point") is unladen at another coastwise point.' " *Id.* at 6 (quoting 19 C.F.R. § 4.80b(a)).

On January 14, 1988, the district court granted plaintiffs' motion for summary judgment, denied defendants' motion to affirm the Customs' decision, and declared that dry-docking operations of the kind arranged by Marathon collide with section 883; the court ordered that Customs "issue no further rulings inconsistent with the foregoing declaration and ... advise those likely to act in reliance upon its prior inconsistent rulings that such rulings are no longer effective." *Shipbuilders Council of America v. United States,* Civil Action No. 87–0972, order at 2 (D.D.C. Jan. 14, 1988). The district court characterized the definition of "coastwise transportation of merchandise" in section 4.80b(a) as "a useful description" but "not all-inclusive" and, indeed, offensive to the Jones Act "when applied to the situation presented by this case." *Id.* at 1. On March 14, 1988, defendants filed a notice of appeal. On March 30, 1988, the district court granted Marathon's motion to intervene as a defendant, and Marathon filed a notice of appeal the next day. This Court consolidated the two appeals.

## II. DISCUSSION

Appellees claim that the Customs "interpretation of the statute ... is the basis of this dispute." Brief for Appellees at 19. They explain that the Marathon ruling is "merely one example of how Customs' interpretation will allow foreign vessels to displace vessels operated by members of one of the plaintiff associations or prevent the building of vessels that would otherwise be built by members of the other plaintiff association." *Id.* Their complaint, filed in April 1987, alleged that the transportation in question had been completed "[d]uring 1986," Complaint for Declaratory Judgment at 2, and expressly sought a ruling from the district court applicable only to future transactions, *id.* at 3. In their contemporaneous letter to Customs, appellees similarly disavowed any interest in sanctioning the Marathon dry-docking activities: "We do not propose the imposition of any penalty ... for the past movement described ... but seek a ruling preventing such movements in the future." April 7, 1987 letter at 2.

Under the Administrative Procedure Act, an interested person may petition for the issuance, amendment, or repeal of a rule. 5 U.S.C. § 553(e) (1982). Appellees appear to have done that in their April 7, 1987 letter, which requested from Customs an interpretive ruling controlling "movements in the future." On September 14, 1987, Customs denied appellees' ruling request with an explanation of the grounds for the denial. *See id.* § 555(e). Appellees themselves identify that denial as "final agency action" from which judicial review would be their only means of relief. Brief for Appellees at 20 & n. 10; *see* 5 U.S.C. §§ 702, 704, 706 (1982).

Appellees, however, did not pursue that standard course. They never petitioned for judicial review of Customs' September 14, 1987 action, and a reasonable time to do so has long since run out. Instead, appellees mounted an attack in court trained on a September 13, 1985 telex ruling in favor of a third party, Marathon, a ruling to which appellees were not parties and which, according to their own acknowledgment, had been implemented in full many months earlier by conduct they did not seek to undo or penalize. They filed their complaint on April 8, 1987, one day after shipping off their ruling request letter to Customs, and one year and a half after the telex Marathon ruling.

■ The district court should have dismissed the complaint instanter. When the civil action was launched, the Marathon

matter was no longer live.[1] As earlier observed, moreover, appellees have, from the start, disavowed proposing the imposition of any penalty upon Marathon or any other person for past activity. When appellees repaired to court, Customs had barely received, and had been accorded no pre-complaint opportunity to respond to, appellees' own prospective ruling request. In short, nothing still live in April 1987 was yet ripe for court review. Although the district court stayed the civil action pending Customs' response to appellees' ruling request, when the response eventually issued on September 14, 1987, appellees made no effort to focus a case on it. As earlier noted, they did not petition for judicial review of that ruling, nor did they seek to amend their district court complaint to target Customs' September 1987 ruling, rather than the agency's September 1985 action, as the matter centrally sub judice.[2] It appears, furthermore, that the district court continued to concentrate on the 1985 telex. Had that court instead homed in on the fuller explanation provided in the September 1987 agency action, the court likely would have dwelled longer on the lesson taught in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (holding that when the statute leaves room for interpretation, courts must respect reasonable readings made by the agency).

In sum, the complaint ruled upon in the district court is nonjusticiable. That complaint is not an appeal from an agency adjudication—appellees were not parties to the September 13, 1985 ruling on Marathon's application, and do not seek to overturn or penalize the action taken by Marathon pursuant to that permission. Nor does that complaint seek review of any rulemaking in which appellees participated.[3] Appellees' plea is, essentially, a request for judicial advice—a declaration that a line of agency rulings should henceforth have no precedential effect. Such pronouncements, abstracted from any actual adjudication, rulemaking, or other agency order, are not within the ken of article III courts.

The eighteen-month lag between the Marathon ruling and the filing of this case, in itself, suggests the impropriety of the civil action appellees shaped. More tellingly, we know of no authority recognizing that the mere potential precedential effect of an agency action affords a bystander to that action a basis for complaint. *See Gulf Oil Corp. v. Brock*, 778 F.2d 834, 838 (D.C. Cir.1985); *Radiofone, Inc. v. FCC*, 759 F.2d 936, 939 (D.C.Cir.1985) (Scalia, J.). The Marathon ruling, precedential effect aside, "has become a matter of purely historical interest, with no present real-world consequences; [any] dispute relating to that approval is therefore moot." *Radiofone*, 759 F.2d at 939.

1. Counsel for the government inexplicably neglected to call this jurisdictional defect to the attention of the district court. The government also failed to raise the issue of standing, to which we turn *infra* p. 457.

2. After oral argument, in a last-ditch attempt to convert their action into a justiciable case or controversy, appellees moved for leave to amend their complaint. We denied this February 3, 1989 motion as far out of time and place. Unlike the appellants in *DKT Memorial Fund, Ltd. v. Agency for International Development*, 810 F.2d 1236, 1239 (D.C.Cir.1987) (granting leave to amend the complaint to remedy appellants' inadvertent failure to allege a fact possibly necessary to establish standing), appellees here attempted to recast their complaint stem to stern. In a proffered pleading labeled "First Amended Complaint," they added seven entirely new paragraphs to the original ten, addressed

the September 1987 letter ruling, and endeavored to establish their standing. While "[d]efective allegations of jurisdiction may be amended, upon terms, [even] in ... appellate courts," 28 U.S.C. § 1653 (1982), an essentially new pleading cannot set sail, initially, on appeal if courts are to operate with reasonable speed and efficiency.

3. We do not foreclose a route our case law marks as proper. Even now, appellees are free to petition Customs for a rulemaking. *See* 5 U.S.C. § 553(e) (1982). The denial of such a petition is subject to judicial review, provided that the petitioner can establish the requisite article III standing. *See WWHT, Inc. v. FCC*, 656 F.2d 807, 809 (D.C.Cir.1981) (cautioning that "the scope of review" when a rulemaking petition is denied "must, of necessity, be very narrow").

In addition to that large and most fundamental jurisdictional defect, *i.e.*, the absence of a justiciable case or controversy, appellees failed to present in the district court "specific, concrete facts demonstrating that the challenged practices harm [them]," facts that are essential to establish article III standing. *Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975). Appellees' complaint simply and generally alleges that they are "associations the members of which are ... United States builders of ocean-going vessels and operators of United States-flag vessels qualified to engage in the coastwise trade." Complaint for Declaratory Judgment at 2. The complaint also asserts that unless the relief requested is granted, "the Customs Service will continue to issue ... rulings [similar to the Marathon telex ruling] in the future and, upon information and belief, similar transportation aboard foreign-built, foreign-flag vessels will continue to occur." *Id.* at 3.

These allegations lack the requisite specificity. "A sincere, vigorous interest in the action challenged, or in the provisions of law allegedly violated, will not do to establish standing"; the party's interest, to satisfy the standing requirement, must be anchored securely to an injury in fact. *Capital Legal Found. v. Commodity Credit Card Corp.*, 711 F.2d 253, 258 (D.C.Cir. 1983). "The bare allegation that a plaintiff is a shipbuilder or a trade association of shipbuilders is insufficient to confer standing to sue under the Jones Act without some allegation of particularized injury resulting from the alleged violation." *106 Mile Transport Assocs. v. Koch*, 656 F.Supp. 1474, 1480 (S.D.N.Y.1987).

Marathon used the foreign barges because they were the only barges of sufficient size that Marathon could locate. Brief of Marathon LeTourneau Company at 5–6 & n. 4. That assertion is uncontradicted in the current record. Appellees ask us to infer that if the Customs interpretation continues to govern, foreign barges will probably displace barges that otherwise eventually would be built and operated by appellees' members. Their hypothesizing, however, never descends from a highly general plane; it remains at a considerable distance from the more concrete pleas deemed sufficient to establish standing under the Jones Act in past cases.[4]

### Conclusion

For the reasons stated, we vacate the district court's declaratory judgment and remand with instructions to dismiss the action for want of a judicially-cognizable controversy.

*It is so ordered.*

---

4. *See, e.g., Autolog Corp. v. Regan*, 731 F.2d 25, 31 (D.C.Cir.1984) (finding it likely that "a loss of employment opportunity" resulted from the "capture of the market" by foreign vessels, citing "the heavy demand" in "what appears to be a booming trade" and the fact "that competitors are already preparing to enter the market"); *American Maritime Ass'n v. Blumenthal*, 458 F.Supp. 849, 855 (D.D.C.1977) (finding it likely that the Shipbuilders Council of America, *inter alia*, would be harmed by the use of foreign tankers to carry Alaskan oil, noting, for example: "Twelve of the thirteen shipbuilders capable of building tankers for Alaskan oil trade belong to the Shipbuilders Council.") (footnote omitted), *aff'd*, 590 F.2d 1156 (D.C.Cir.1978), *cert. denied*, 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979).