INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA, et al., Plaintiffs,

v.

Bruce BABBITT, Secretary of the Interior, et al., Defendants.

No. CIV.A. 93-2544(RCL).

United States District Court, District of Columbia.

Feb. 13, 1998.

L. Poe Leggette, Jackson & Kelly, Washington, DC, E. Edward Bruce, Covington & Burling, Washington, DC, David Sweet, Independent Petroleum Association of America, Washington, DC, Marla J. Williams, Holme, Roberts & Owen, L.L.C., Denver, CO, Hugh Schaefer, Welborn, Sullivan, Meck & Tooley, Denver, CO, for Plaintiffs.

Michael Reed, Assistant Chief (Trial Attorney), Ann D. Navaro, Department of Justice, Environmental and Natural Resources Division, General Litigation Section, Washington, DC, Lisa K. Hemmer, Peter J. Schaumberg, Geoffrey Heath, Department of Interior, Office of Solicitor, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on the motion of Independent Petroleum Association of America, *et al.* (collectively "IPAA") to alter or amend judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. Based upon the memoranda of the parties and the relevant law, plaintiffs' motion is denied.

Federal Rule of Civil Procedure 59(e) permits parties to move the court to alter or amend judgments in limited circumstances. *See National Resources Defense Council, Inc. v. EPA,* consolidated with *American Petroleum Institute v. EPA,* 705 F.Supp. 698, 700–02 (D.D.C.1989). The primary reasons for submitting a Rule 59(e) motion are "an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir.1996), citing *National Trust for Historic Preservation v. Dep't of State,* 834 F.Supp. 453, 455 (D.D.C.1993), *aff'd in part and rev'd in part on other grounds sub nom., Sheridan Kalorama Historical Ass'n v. Christopher,* 49 F.3d 750 (D.C.Cir.1995) (quoting *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.), *cert. denied,* 506 U.S. 820, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992)). Rule 59(e) motions are not to be used to relitigate matters already argued and disposed of; they are intended to permit the court to correct errors of fact appearing on the face of the record, or errors of law. *United States v. Western Elec. Co.,* 690 F.Supp. 22, 25 (D.D.C.1988). Whether to grant or deny a motion for reconsideration is committed to the discretion of the trial court. *See Firestone,* 76 F.3d at 1208.

## I. THIS COURT DID NOT CREATE CLEAR ERROR OR MANIFEST INJUSTICE IN ITS APPLICATION OF THE FUTILITY DOCTRINE

Plaintiffs request that this court reconsider its conclusion that futility cannot create "final agency action" required for judicial review, *see Lujan v. National Wildlife Federation,* 497 U.S. 871, 881–84, 110 S.Ct. 3177, 3184–87, 111 L.Ed.2d 695 (1990), and that this court was therefore without jurisdiction to hear IPAA's complaint. *See Independent Petroleum Ass'n of America v. Babbitt,* 971 F.Supp. 19, 27–30 (D.D.C.1997). They contend that *"nothing* in the law of the D.C. Circuit conflicts with the 'common sense' approach" that would create a futility exception to finality, an exception apparently adopted by the Ninth Circuit in *Air One Helicopters, Inc. v. FAA,* 86 F.3d 880, 882 (9th Cir.1996). Motion to Alter or Amend Judgment at 3. As support for the proposition that the futility should create finality and subject matter jurisdiction in the instant matter, plaintiffs rely primarily upon the District of Columbia Circuit's recent decision in *Chadmoore Communications, Inc. v. FCC,* 113 F.3d 235, 239–40 (D.C.Cir.1997).

The difficulty with plaintiffs' citation to *Chadmoore,* as well as *Omnipoint Corp. v. FCC,* 78 F.3d 620, 635 (D.C.Cir.1996) and *Washington Ass'n for Television & Children v. FCC,* 712 F.2d 677, 680–84 (D.C.Cir.1983) *("WATCH "),* is that such a comparison conflates the doctrines of finality and exhaustion, an often-blurred distinction which this circuit has been especially diligent in demarcating. *See Ticor Title Insurance Co. v. FTC,* 814 F.2d 731, 745 (D.C.Cir.1987) (Williams, J., concurring) ("the distinctions remain important"); *Association of National Advertisers, Inc. v. FTC,* 627 F.2d 1151, 1177 (D.C.Cir. 1979) (Leventhal, J., concurring) (noting that finality overlaps the requirement of exhaustion but is "fundamentally distinct"). *See also Darby v. Cisneros,* 509 U.S. 137, 144, 113 S.Ct. 2539, 2543, 125 L.Ed.2d 113 (1993) ("We have recognized that the judicial doctrine of exhaustion is conceptually distinct from the doctrine of finality.")

In *Chadmoore,* the FCC issued a final rule establishing criteria for the grant of wide-area specialized mobile radio ("SMR") system licenses. In that same order, the FCC denied Chadmoore Communications, Inc.'s ("CCI") application for an extended implementation period within which to complete the construction of a wide-area SMR system, concluding that, "requests for extended implementation authority currently pending...

would conflict with the FCC's goal of uniformly implementing wide area licensing." *Id.* at 239 (quoting *First Report and Order, Eighth Report and Order and Second Notice of Proposed Rulemaking,* 11 F.C.C.R. 1463, 1526 (1995)). CCI filed an appeal without first petitioning the FCC for reconsideration. The FCC argued that the court of appeals was barred from reviewing CCI's claims because 47 U.S.C. § 405 (1994) requires complainants to give the FCC a fair opportunity to pass on legal or factual argument prior to presenting those arguments to the court of appeals. *See id.* (citing *WATCH,* 712 F.2d at 681).

In reviewing section 405, the court of appeals stated that it "incorporates 'traditionally recognized exceptions to the exhaustion doctrine [which permit] a reviewing court [to] consider arguments ... that would have been futile [for the petitioner] to raise before the agency.'" *Id.* (quoting *Omnipoint,* 78 F.3d at 635). The court then noted its agreement with CCI that it would have been futile for CCI to have sought reconsideration of the FCC's denial of the application for extended implementation authority, as granting CCI's application would "conflict with [the] goal of uniformly implementing wide-area licensing." *Id.* (quoting 11 F.C.C.R. at 1526 (1995)). In light of the futility of CCI's seeking reconsideration, the court held that filing a motion for reconsideration was unnecessary, and that the court could reach the merits of the challenge despite CCI's failure to exhaust administrative remedies.

Though plaintiffs claim that *Chadmoore* should "apply *a fortiori* in this case," there is a critical distinction between the two: in *Chadmoore,* the FCC had issued a final rule after seeking public comments as to whether CCI's request should be granted. *See Chadmoore,* 113 F.3d at 238. *Finality* of the agency's decision was never at issue. The question before the court of appeals was only whether *exhaustion* of administrative remedies was required in the face of futility. The court expressly noted that the inquiry was one concerning exhaustion, and that section

405 addressed that particular doctrinal requirement. *See Chadmoore,* 113 F.3d at 239 ("section 405 ... 'codif[ies] the judicially created doctrine of *exhaustion of administrative remedies*'" (emphasis added) (quoting *City of Brookings Mun. Tel. Co. v. FCC,* 822 F.2d 1153, 1163 (D.C.Cir.1987) (internal quotation marks and citations omitted))).

By contrast, in the instant case, the May 3 "Dear Payor" letter did not constitute a rulemaking requiring APA notice-and-comment procedures. *See Independent Petroleum Association of America et al. v. Babbitt,* 92 F.3d 1248, 1256–57 (D.C.Cir.1996) (quoting the district court's holding that "[n]othing in the DOI's procedures vest authority in the Associate Director of MMS [the letter's author] or even the Director, to issue proclamations binding on the agency. The court will not invent such authority." *IPAA v. Babbitt,* 1995 WL 431305 at *4 (D.D.C.1995)). The letter was determined to have *not* been an agency statement with future effect, as it did not bind the agency in any way. *See id.* Nor did IPAA have a final "order to pay" for which administrative remedies had been exhausted, which is the manner by which this court was able to exercise jurisdiction and judicial review over the Samedan Oil order to pay. It was the Court of Appeals' holding that the May 3 "Dear Payor" letter was not final agency action, combined with the absence of any final rule, final adjudication or some other agency action with a sufficiently direct and immediate effect on day-to-day business, *see Abbott Labs. v. Gardner,* 387 U.S. 136, 152, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681 (1967), that occasioned this court's need to determine whether futility of administrative review could create finality where it did not otherwise exist. *See IPAA,* 971 F.Supp. at 27. *Chadmoore* did not address that specific question because it was not presented; whether there was some form of final agency action was not in dispute. Therefore, while it is true that 47 U.S.C. § 405 incorporates the traditionally recognized futility exception, as plaintiffs claim, *Chadmoore* only demonstrates that it is incorporated in terms of exhaustion, not in terms of finality.[1]

---

1. In a supplemental memorandum, plaintiffs alert this court to *OXY USA Inc. v. Babbitt,* No. 96–C–1067–K (Sept. 23, 1997 N.D. Okla.), which

they allege "represents a square holding ... that notwithstanding APA § 704 district courts may review MMS's orders to pay prior to the exhaus-

This court notes, as it did in its original opinion, that the analytical distinctions between exhaustion and finality, as well as ripeness, are often blurred to the point of being indistinguishable, as they all "serve the interests in agency autonomy and judicial economy" and "[a]ll depend, in varying degrees, on the view that further administrative activity (or inactivity) may give effective victory to the complaining party, thus obviating the need for judicial intervention." *Ticor*, 814 F.2d at 745. However, as this court also noted, the purpose underpinning finality, namely, "to distinguish a tentative agency position from a situation where 'the agency views its deliberative process as sufficiently final to demand compliance with its announced position,'" *National Resources Defense Council, Inc. v. EPA*, 22 F.3d 1125, 1132–33 (D.C.Cir.1994) quoting *Ciba–Geigy Corp. v. EPA*, 801 F.2d 430, 435–36 (D.C.Cir. 1986) is fundamentally distinct from that underpinning exhaustion, which looks to the procedural steps that a litigant must take, *Ticor*, 814 F.2d at 746, and is intended to allow an agency to "have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975) (citing *McKart v. United States*, 395 U.S. 185, 193–94, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969)). When an agency's deliberative decisionmaking process is not complete, judicial interference is especially inappropriate.[2] While there do exist some circumstances in which the general jurisdictional barrier of finality may be by-

passed, these situations are strictly limited to "extreme instances where the action is held to constitute an effective deprivation of appellant's rights." *See Association of National Advertisers*, 627 F.2d at 1178 (citing *Thermal Ecology Must Be Preserved v. Atomic Energy Comm'n*, 433 F.2d 524, 526 (D.C.Cir. 1970)); *see also DRG Funding Corp. v. Secretary of Housing and Urban Dev.*, 76 F.3d 1212, 1215 (D.C.Cir.1996) ("claims of hardship 'will rarely overcome the finality and fitness problems inherent in attempts to review tentative positions'") (quoting *Public Citizen Health Research Group v. Commissioner, Food & Drug Administration*, 740 F.2d 21, 31 (D.C.Cir.1984)). Such a situation is not presented in this case.

This court is not unmindful of the consequences that flow from its conclusion that futility cannot create final agency action for the purposes of jurisdiction—that each affected gas company may have to follow the steps that Samedan Oil took in getting its case properly before the court; namely, receiving an order to pay and then appealing that order pursuant to DOI rules. In response, this court turns to the language of Judge Leventhal, who explained:

> A court must disclaim jurisdiction notwithstanding the claim that the action already taken realistically means that the ongoing proceeding will be waste motion and will have to be done over again. This is "part of the price we pay for the advantages of an administrative process" and preferable to having the process "clogged if there were interlocutory appeals to the courts."

tion of all administrative appeals, if it would be futile to pursue those appeals within the agency." This court finds *OXY* to be unpersuasive on this point. The decision held only that OXY did not have to present a "futile" statute of limitations challenge to MMS because the agency had consistently rejected such challenges on the basis that they are inapplicable to administrative proceedings. If anything, *OXY* directs this court to *decline* jurisdiction, as the court dismissed without prejudice all claims but the statute of limitations claim, noting plaintiffs' failure to exhaust administrative remedies. *See OXY* at *3–4, *9.

**2.** This inappropriateness is brought out in the instant case. In their opposition, defendants state, "the agency should be permitted to consid-

er the pending administrative appeals, investigations and facts and should be free to decide first the question of how it will proceed on these issues.... It is up to the executive branch to decide how to proceed and how to resolve pending matters in the first instance ...." and "DOI should be permitted the opportunity to decide how to proceed in real cases on real facts." Defendant's Opposition at 12, 12 n.10. Defendants intimate that the adjudicatory process may not, in fact, be "futile," and that reconsideration of its position is a possibility in light of intervening events. To the extent that MMS is not going to "unrepentantly apply[] this policy—already held irrational in *IPAA*—as if it were a final agency action" *IPAA*, 971 F.Supp. at 28, judicial review at this juncture is wholly inappropriate.

*Association of National Advertisers*, 627 F.2d at 1178 (quoting *Thermal Ecology Must Be Preserved*, 433 F.2d at 526.)

## II. FACTS REGARDING RIO PETROL AND WALKER

Defendants dedicate a substantial portion of their opposition memorandum to plaintiffs' contention that Mineral Management Services' "defiant and unswerving" position on the collection of royalties for non-recoupable take-or-pay settlements has forced two companies—Rio Petrol, Inc. and Robert Walker ("Rio Petrol/Walker")—into a "Hobson's Choice" of either paying royalties or facing penalties equaling three times the amount of the royalty assessment. Defendants claim that Rio Petrol/Walker find themselves in this position not through any act of agency defiance, but through their own failure to comply with agency regulations that require a lessee to either pay the assessed royalties or appeal the royalty order, which suspends the obligation to pay. *See* Defendants' Opposition at 7–8; *see also* 30 C.F.R. § 243.2; 43 C.F.R. § 4.21. They contend that the situation facing these two entities is "unique," noting that the remainder of the industry carefully followed the relevant agency regulations by either appealing or complying with the agency's orders (with the apparent exception of McKay Oil Corp.), leaving them in no danger of having civil penalties assessed. *See* Defendants' Opposition at 7–8; Affidavit of Kenneth Vogel at ¶ 18. Furthermore, they accurately note that to the extent that plaintiffs are presenting the imposition these of civil penalties as new evidence justifying reconsideration under Rule 59(e), it is untimely because "[a]ll of the relevant events informing Rio Petrol and Walker of MMS' intention to impose penalties occurred, with full involvement of IPAA counsel, prior to IPAA's first filing requesting a nationwide injunction." Defendants' Opposition at 10 (citing *Natural Resources Defense Council*, 705 F.Supp. at 701–02).

Plaintiffs' reply brief effectively obviates this court's need to address the facts regarding Rio Petrol/Walker in substantial detail.[3]

They contend that they never intended to present the example of the potential penalties on the two lessees as new evidence warranting reconsideration of the court's July 25 opinion under Rule 59(e). Rather, they state, "IPAA pointed to these proceedings only as further evidence of MMS's continuing pursuit of royalties on take-or-pay settlement monies, notwithstanding *IPAA v. Babbitt*, 92 F.3d 1248 (D.C.Cir.1996)." Plaintiffs' Reply at 2. To the extent that plaintiffs only wished to present further evidence of the agency's intransigence, this court notes that it has already strongly intimated the existence of futility, describing the government's continuing insistence on collecting royalties on non-recoupable take-or-pay settlements as "defiant" and recognizing that it would be "exasperatingly futile to force hundreds upon hundreds of companies to engage in costly battles with the government where but one result is possible." *IPAA*, 971 F.Supp. at 28. Further evidence of, or elucidation upon, MMS's unswerving position on collecting royalties is not necessary.

Because plaintiffs' discussion of the Rio Petrol/Walker civil penalties was included ostensively to illustrate futility, and the existence of futility is not at issue in the motion for reconsideration, further discussion of the facts regarding these lessees is not necessary, except to note that all of the relevant information concerning Rio Petrol/Walker was known to plaintiffs' counsel prior to this court's July 25, 1997 decision, is therefore is not "new evidence" under Rule 59(e), and is improperly raised in a motion for reconsideration. *See, e.g., DeWit v. Firstar Corp.*, 904 F.Supp. 1476, 1495 (N.D.Iowa 1995) (motions to alter or amend judgments cannot be used to raise arguments that should have been made prior to the entry of judgment); *Weyerhaeuser Corp. v. Koppers Company, Inc.*, 771 F.Supp. 1406, 1419 (D.Md.1991) (same).

As plaintiffs have failed to present any newly discovered evidence or cite any manifest error of law or fact, they have failed to meet the Rule 59(e) standard for altering or amending the judgment. Accordingly, plain-

---

**3.** This court only wishes to note that it *did not* consider plaintiffs' inclusion of the allegations regarding Rio Petrol/Walker as indicating that

"all of IPAA's members now suddenly face civil penalties."

tiffs' Motion to Alter or Amend Judgment is
DENIED.

SO ORDERED.