**INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA, et al., Appellants,**

v.

**Bruce BABBITT, Secretary of the Interior, et al., Appellees.**

**No. 98–5131.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 1, 2000.

Decided Jan. 5, 2001.

590

L. Poe Leggette argued the cause for appellants. With him on the briefs were Laura S. Morton and Stephen M. McNabb. E. Edward Bruce, Nancy L. Pell and Thad S. Huffman entered appearances.

Ronald M. Spritzer, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were James F. Simon, Acting Assistant Attorney General, and Sean H. Donahue, Attorney.

Before: SENTELLE, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

In the consolidated cases of *Independent Petroleum Association of America v. Babbitt (Samedan Oil Corp. v. Deer)*, 92 F.3d 1248 (D.C.Cir.1996), we held that (1) a policy letter written by an Associate Director of the Minerals Management Service clarifying the royalty consequences of take-or-pay settlement payments was not a rule subject to the notice-and-comment requirements of the Administrative Procedure Act; and (2) the decision of an Assistant Secretary of the Department of the Interior in *Samedan Oil Corp.*, MMS–94–0003–IND (Sept. 16, 1994), was arbitrary and capricious. On remand, the District Court granted in part Samedan Oil Corporation's ("Samedan") motions for entry of an order implementing the mandate of this Court and for injunctive relief, *Independent Petroleum Ass'n of Am. v. Babbitt*, 971 F.Supp. 19, 35–36 (D.D.C.1997), but denied a similar motion made by the Independent Petroleum Association of America ("IPAA"), *see id.* at 30, 35. The District Court concluded that IPAA was not a party to Samedan's case and that IPAA's remaining claim—a "general challenge to the authority of [the Department of the Interior] to charge" royalties on nonrecou-

pable take-or-pay settlement payments—did not challenge final agency action. *Id.* at 26. Accordingly, the District Court held that it lacked jurisdiction over IPAA's claim and therefore dismissed its complaint. IPAA now returns to this Court asking us to reverse the lower court's decision. For the reasons set forth below, we affirm.

## I. BACKGROUND

The instant appeal continues a long history of litigation focusing on whether the Department of the Interior ("DOI") should be permitted to collect royalties from gas-producing companies that lease land from DOI when those companies receive payments based on their take-or-pay settlement agreements with gas pipelines.[1] DOI initially took the position that under its gross proceeds rule, *see* 30 C.F.R. §§ 206.151, .152(h), .153(h) (1987), gas producers owed royalties for receiving such payments. In 1988, the Fifth Circuit rejected this position, holding that "[r]oyalty payments are due only on the value of minerals actually produced, i.e., physically severed from the ground. No royalty is due on take-or-pay payments unless and until gas is actually produced and taken." *Diamond Shamrock Exploration Co. v. Hodel*, 853 F.2d 1159, 1168 (5h Cir.1988). DOI subsequently amended the gross proceeds rule to reflect this holding, "remov[ing] the requirement to pay royalties on take-or-pay payments at the time the payment is made" but continuing to require royalties "when make-up gas is taken." Revision of Gross Proceeds Definition in Oil and Gas Valuation Regulations, 53 Fed.Reg. 45,082, 45,083 (Nov. 8, 1988). In a May 3, 1993 letter, the Associate Director of DOI's Minerals Management Service ("MMS") sought to clarify the gross proceeds rule, stating that "some or all of a settlement payment is or will become royalty bearing if production to

1. For a detailed explanation of the statutes and regulations that form the basis for this litigation and the history of the take-or-pay settlements at issue, *see Independent Petroleum Association of America v. Babbitt ("IPAA I")*, 92 F.3d 1248, 1251–53 (D.C.Cir.1996).

which specific money is attributable occurs." Letter from James W. Shaw, Associate Director for Royalty Management, MMS, addressed to "Payor" (May 3, 1993) [hereinafter May 1993 letter]. In other words, according to the letter, "the only relevant question is whether or not the gas which was originally spoken for in the settled contracts is eventually sold to *someone.*" *Independent Petroleum Ass'n of Am. v. Babbitt* ("*IPAA I*"), 92 F.3d 1248, 1253 (D.C.Cir.1996) (emphasis in original).

In August 1993, the Independent Petroleum Association of America, an association of roughly 5,000 independent explorers and producers of natural gas and oil, responded to the letter by filing a suit seeking injunctive relief to prevent DOI from collecting royalties on unrecoupable take-or-pay settlement payments. IPAA's complaint argued, *inter alia,* that (1) DOI adopted a new rule through the May 1993 letter without following the notice-and-comment procedures required by the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, and (2) DOI's efforts to collect royalties based on the settlement agreements violated the statutes governing the royalties owed under DOI leases. In 1994, in an effort to "simplify ... some of the procedural aspects of [ ] the IPAA Litigation," DOI and IPAA entered an agreement whereby MMS would issue up to 10 orders to companies to pay royalties based on their settlement agreements. Agreement, *Independent Petroleum Ass'n of Am. v. Babbitt,* No. 93–2544 (D.D.C. Feb. 4, 1994). The companies could then appeal these orders to an Assistant Secretary of DOI, who would issue decisions that could become "appropriate vehicles to seek judicial review on the merits of the May [1993] Letter." *Id.* at 5.

Later that year, MMS issued an order to Samedan Oil Corporation requiring it to pay royalties on settlement payments made by Southern Natural Gas Company. Samedan appealed the order to DOI's Assistant Secretary for Indian Affairs. The Assistant Secretary upheld the order based on the policies articulated in the May 1993 letter. *See Samedan Oil Corp.,* MMS–94–0003–IND (Sept. 16, 1994). Samedan appealed to the District Court seeking judicial review of the Assistant Secretary's decision. Then, as we explained in *IPAA I,* "the District Court consolidated Samedan's challenge with IPAA's challenge to the May 1993 letter." *IPAA I,* 92 F.3d at 1255. After the District Court granted summary judgment for DOI in both cases, Samedan and IPAA appealed to this Court.

On appeal, we reversed the District Court's granting of summary judgment, holding that (1) the May 1993 letter was not a "rulemaking requiring APA notice-and-comment procedures," *id.* at 1256, and (2) the Assistant Secretary's *Samedan* decision was "arbitrary and capricious in light of DOI's adoption of the *Diamond Shamrock* holding," *id.* at 1260. Accordingly, we held that DOI was precluded from collecting royalty payments from Samedan. *See id.*

On remand, IPAA and Samedan filed motions with the District Court seeking an order implementing the "mandate of the court of appeals" and a permanent injunction against DOI from collecting royalties from Samedan. *Independent Petroleum Ass'n of Am. v. Babbitt,* 971 F.Supp. 19, 23 (D.D.C.1997). The District Court granted Samedan's motion for injunctive relief, *see id.* at 36, and denied IPAA's motion to implement this Court's mandate, *see id.* at 30, 35. In denying IPAA's motion, the District Court ruled that our decision in *IPAA I* only addressed IPAA's claim concerning MMS's May 1993 letter, not its "wide-ranging" complaint concerning DOI's efforts to collect royalties based on take-or-pay settlement agreements. *See id.* at 26. The District Court explained that our holding concerning the Assistant Secretary's *Samedan* decision extended only to Samedan, not to IPAA. Noting that IPAA had not sought to join Samedan's case, the District Court reasoned

that IPAA could not "be considered a true party to Samedan's case, but must stand or fall on its own." *Id.* Consistent with this reasoning, the District Court reviewed whether it had jurisdiction to hear IPAA's broad challenge to DOI's royalty policy. Although recognizing that further administrative review would be futile in light of DOI's insistence that it would continue to apply the policies underlying the May 1993 letter, the Court ultimately ruled that it lacked jurisdiction because IPAA does "not face any final actions which [it] may challenge." *Id.* at 30. Accordingly, the District Court dismissed IPAA's claim. IPAA appeals from this ruling.

## II. ANALYSIS

DOI contends that the issues raised by IPAA are not properly before this Court. Following the District Court's dismissal of its claim, IPAA filed a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure asking the District Court to amend its judgment, arguing that "nothing in the law of the D.C. Circuit conflicts" with adopting a futility exception to the finality requirement. *Independent Petroleum Ass'n of Am. v. Babbitt,* 178 F.R.D. 323, 324 (D.D.C.1998) (mem.). IPAA suggested that in its case "futility should create finality and subject matter jurisdiction." *Id.* The District Court denied this motion, concluding that our Circuit has constrained the futility exception to the requirement of exhausting administrative remedies before seeking judicial review. *See id.* at 324–25. The Court noted that IPAA's argument "conflate[d] the doctrines of finality and exhaustion," *id.* at 324, and held that "futility cannot create agency action for purposes of jurisdiction," *id.* at 326.

■ IPAA's Notice of Appeal states that IPAA appeals from the District Court's order "denying plaintiffs' motion to alter or amend the judgment dismissing the complaint." DOI points out that the arguments IPAA makes on appeal deal solely with the District Court's dismissal of its complaint, not its Rule 59(e) motion. Because IPAA's Notice of Appeal refers only to the District Court's denial of this motion without referencing the dismissal of its complaint, DOI suggests that, in light of Rule 3(c) of the Federal Rules of Appellate Procedure, IPAA's arguments concerning the dismissal of its claim are not properly before us.

■ Under Rule 3(c), a notice of appeal must "designate the judgment, order, or part thereof being appealed." Fed. R.App. P. 3(c)(1)(B). Nevertheless, a party's failure to designate the proper order it intends to appeal is "not necessarily fatal." *Martin v. FERC,* 199 F.3d 1370, 1372 (D.C.Cir.2000). As we have explained, "a party may demonstrate its intention to appeal from one order despite referring only to a different order in its petition for review if the petitioner's intent can be fairly inferred from the petition or documents filed more or less contemporaneously with it." *Id.* (internal quotes omitted). Furthermore, without a showing of prejudice by the appellee, technical errors in the notice of appeal are considered harmless. *See McLaurin v. Fischer,* 768 F.2d 98, 102 (6h Cir.1985) (citing *Foman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

We conclude that the arguments raised by IPAA concerning the District Court's dismissal of its complaint are properly before us. IPAA's intention to appeal from the actual dismissal is clear. In the Non–Binding Statement of Issues to be Raised, IPAA explicitly stated one issue as "[w]hether ... the district court erred in dismissing appellants' complaint with prejudice on the grounds that they had not complained of 'final' agency action within the meaning of 5 U.S.C. § 704." J.A. at 300. It is also worth underscoring that DOI does not claim that it was prejudiced by IPAA's referring to the wrong order in its Notice of Appeal. *See Martin,* 199 F.3d at 1373 (noting that appellee did not "claim to suffer any prejudice"). Not only

did DOI fully brief the merits of the District Court's dismissal of IPAA's claim, but its earlier filings demonstrate that it understood the true nature of IPAA's appeal. For example, in one responsive document it noted that one issue before the Court is "the import of this Court's decision in *IPAA v. Babbitt* and whether injunctive relief is appropriate." Federal–Appellees' Consolidated Response to Appellants' Response to Order to Show Cause at 5, *Shell Offshore, Inc. v. Department of the Interior*, No. 98–5116 (D.C.Cir.2000)[2]; *cf. Foman*, 371 U.S. at 181, 83 S.Ct. 227 ("[B]oth parties brief[ed] and argue[d] the merits of the earlier judgment on appeal...."); *Martin*, 199 F.3d at 1373 (FERC's responses "indicate that the agency was aware from the outset that [petitioner] meant to seek review of the Certificate Order."). We therefore proceed to consider the substance of IPAA's contention that the District Court erred in dismissing its complaint for failing to challenge final agency action.

■ IPAA argues that its claim originally included a challenge to the *Samedan* decision and that in *IPAA I* we reversed the District Court's order granting summary judgment against IPAA in its challenge to *Samedan*. IPAA suggests the District Court ignored this mandate by refusing to enter a judgment in its favor and subsequently dismissing its complaint. According to IPAA, by reopening questions already determined in earlier phases of this litigation, the District Court violated the mandate rule. Further, IPAA contends that the *Samedan* decision constitutes a final agency action that provides the basis for a justiciable claim. In response to IPAA's arguments, DOI submits that (1) IPAA's complaint did not challenge final agency action; (2) IPAA does not have standing to challenge the *Samedan* decision; and (3) IPAA's claim is not ripe for review.

As we have explained before, "we have no difficulty dismissing a case based on one jurisdictional bar rather than another." *Louisiana Envtl. Action Network v. Browner*, 87 F.3d 1379, 1384 (D.C.Cir. 1996). We therefore need not identify every ground for holding that a claim is not justiciable. *See id.* at 1385. We conclude that the District Court properly dismissed IPAA's complaint because of the lack of final agency action. *Cf. Public Citizen v. Office of the U.S. Trade Representatives*, 970 F.2d 916, 918 (D.C.Cir.1992) (explaining that the absence of a final agency action "removes any need for considering the government's other jurisdictional argument").

■ Section 704 of the Administrative Procedure Act, 5 U.S.C. § 704, provides for judicial review of final agency action— that is, for a court to have jurisdiction over a case brought pursuant to § 704, the complaint must challenge a final action of an agency. *See Public Citizen*, 970 F.2d at 918. As we stated in *DRG Funding Corp. v. Secretary of Housing & Urban Development*, 76 F.3d 1212 (D.C.Cir.1996), "[t]he requirement of a final agency action has been considered jurisdictional. If the agency action is not final, the court therefore cannot reach the merits of the dispute." *Id.* at 1214 (citation omitted). The APA defines agency action to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). In determining whether such action is final, we consider "whether the agency's position is 'definitive' and whether it has a 'direct and immediate ... effect on the day-to-day business' of the parties." *Ciba-Geigy Corp. v. United States Envtl. Protection Agency*, 801 F.2d 430, 436 (D.C.Cir.1986) (quoting *Federal Trade Comm'n v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) (internal quotes omit-

2. Originally, IPAA's current appeal was consolidated with *Shell Offshore, Inc. v. Department of the Interior*. Shell and DOI filed a joint motion to stay all proceedings in the Shell cases. On August 8, 2000, this Court granted the motion.

ted)); *see also Bennett v. Spear,* 520 U.S. 154, 178, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (An agency action is final if it "mark[s] the consummation of the agency's decisionmaking process" and is "one by which rights or obligations have been determined, or from which legal consequences will flow." (citations and internal quotes omitted)).

IPAA's complaint not only does not challenge final agency action, it is not at all clear what agency action IPAA purports to challenge. The complaint states that IPAA challenges DOI's "efforts to collect" royalties on take-or-pay settlement payments. What those "efforts" entail is less than clear. What is clear, however, is that these "efforts" are not final agency actions fit for judicial review.

At best, IPAA's characterization of DOI's "efforts" seems analogous to the National Wildlife Federation's ("NWF") attempt to challenge the Bureau of Land Management's ("BLM") "land withdrawal review program" in *Lujan v. National Wildlife Federation,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). NWF used the term "program" to describe BLM's activities in complying with the Federal Land Management Policy Act of 1976, 43 U.S.C. § 1701 *et seq.* The *Lujan* Court explained that "[t]he term 'land withdrawal review program' ... does not refer to a single BLM order or regulation, or even to a completed universe of particular BLM orders and regulations." *Lujan,* 497 U.S. at 890, 110 S.Ct. 3177. Accordingly, the Court concluded that the program was not "an identifiable action," *id.* at 899, 110 S.Ct. 3177, and therefore held that NWF's claim could not be reviewed under the APA. *See id.* at 892–93, 110 S.Ct. 3177. Like the "program" in *Lujan,* the "efforts" that IPAA seeks to challenge do not refer to any particular action taken by DOI, much less to any particular order, regulation, or completed universe of orders or regulations. *Cf. Sierra Club v. Peterson,* 228 F.3d 559, 566 (5th Cir.2000) (en banc) ("This is not a justiciable challenge

because the program of timber management to which the environmental groups object does not mark the consummation of the agency's decisionmaking process ... or constitute an identifiable action or event." (internal citations and quotations omitted)); *Foundation on Econ. Trends v. Lyng,* 943 F.2d 79, 86–87 (D.C.Cir.1991) (holding that a plaintiff's complaint concerning the Department of Agriculture's "germplasm preservation program" did not challenge agency action under the APA). Instead, IPAA seeks to litigate the type of "generic challenge" the *Lujan* Court refused to hear. *Lujan,* 497 U.S. at 891 n. 2, 110 S.Ct. 3177.

IPAA itself seemed to recognize this shortcoming when it entered an agreement with DOI to "simplify ... some of the procedural aspects of [ ] the IPAA Litigation." Agreement, *Independent Petroleum Ass'n of Am. v. Babbitt,* No. 93–2544 (D.D.C. Feb. 4, 1994). That agreement recognized that MMS would issue up to 10 orders to companies to pay royalties based on their settlement agreements. The companies could then appeal these orders to an Assistant Secretary of DOI who would issue decisions that could become "appropriate vehicles to seek judicial review"— that is, those orders would provide the foundation for justiciable test cases. *Id.* at 5. Of course, the order issued to Samedan provided the basis for one of those cases. *See Independent Petroleum Ass'n of Am.,* 971 F.Supp. at 24.

■ Now IPAA claims that it is challenging DOI's *Samedan* decision. That decision, however, is never mentioned in IPAA's complaint. Indeed, DOI issued the *Samedan* decision over a year after IPAA filed its complaint in this case. IPAA never amended its complaint to add a claim challenging that decision. Nor did IPAA seek to intervene when Samedan appealed the Assistant Secretary's decision. Although IPAA's case was later consolidated with Samedan's case, the two cases continued to be separate. *See Cella v. Togum Constructeur Ensemleier en In-*

*dustrie Alimentaire,* 173 F.3d 909, 912 (3d Cir.1999) (noting consolidation does not merge suits into a single case). Simply because IPAA and Samedan were represented by the same counsel and filed a joint brief on appeal, their individual cases were not somehow merged into one—they remained separate and distinct.

■■ Alternatively, IPAA avers that in *IPAA I* the parties litigated the *Samedan* decision by implied consent through their cross-motions for summary judgment. *See* FED.R.CIV.P. 15(b). According to Rule 15(b), "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." *Id.* The Rule's implied consent provision is normally invoked when evidence concerning an issue not addressed in the pleadings is introduced at trial without objection. *See* 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1493 (2d ed.1990). In such cases, we uphold a trial court's determination of whether parties impliedly consented to try an issue unless the court abused its discretion. *See Kirkland v. District of Columbia,* 70 F.3d 629, 633 (D.C.Cir.1995).

It is an open question whether the Federal Rules permit parties to impliedly consent to "try" issues not raised in their pleadings through summary judgment motions. In *Harris v. Secretary, U.S. Department of Veterans Affairs,* 126 F.3d 339 (D.C.Cir.1997), we wrote that "[b]ecause a case decided on motion for summary judgment does not reach trial, ... Rule 15(b) does not apply." *Id.* at 344 n. 3. Yet, in *Kulkarni v. Alexander,* 662 F.2d 758 (D.C.Cir.1978), we noted that Rule 15(b)'s "general principle has been applied to motions for summary judgment." *Id.* at 762. We need not decide that general question. In this case there is no clear evidence in the record that DOI consented to allow IPAA to challenge the *Samedan* decision—certainly no proof sufficient to re-

verse the District Court's ruling that IPAA did not challenge the *Samedan* decision. *See Independent Petroleum Ass'n of Am.,* 971 F.Supp. at 25–26. In fact, this case's history is sprinkled with references made by IPAA that its case is distinct from Samedan's. For example, in the proceedings leading up to this Court's decision in *IPAA I,* IPAA distinguished between "the Association's *generic challenge* to [DOI's] interpretation and enforcement of their royalty value regulations" and "Samedan's challenge to a *particular order* to pay additional royalties owed under the terms of its lease." Joint Motion for Enlargement of Page Limitations at 2, *IPAA I,* 92 F.3d 1248 (D.C.Cir.1996) (No. 95–5210) (emphasis added). Likewise in its *IPAA I* brief, IPAA specifically described two suits: IPAA's challenge to the May 1993 letter and "[t]he second suit ... brought by Samedan Oil Corporation ... challeng[ing] a 1994 decision of Interior Department Assistant Secretary Deer." Appellants' Brief at 4, *IPAA I,* 92 F.3d 1248 (D.C.Cir.1996) (Nos. 95–5210 & 95–5245). DOI also recognized that the two cases were distinct in *IPAA I,* as its brief provided separate procedural backgrounds for IPAA's suit "challenging the propriety of the MMS Associate Director's May 1993 letter" and Samedan's effort to seek "judicial review of the Assistant Secretary's [*Samedan*] decision." Appellee's Brief at 11, 16, *IPAA I,* 92 F.3d 1248 (D.C.Cir. 1996) (Nos. 95–5210 & 95–5245). Given this history, we cannot possibly find that the parties impliedly consented to litigate the *Samedan* decision.

■■■ IPAA argues that the mandate rule precludes the District Court—and now this Court—from holding that it never challenged the *Samedan* decision. Specifically, IPAA points to language in our *IPAA I* decision suggesting that it had challenged the Agency's decision. Under the mandate rule, "an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Pennsylvania R.R. Co.,*

334 U.S. 304, 306, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948). The mandate rule is a "more powerful version" of the law-of-the-case doctrine, which prevents courts from reconsidering issues that have already been decided in the same case. *LaShawn A. v. Barry* ("*LaShawn II*"), 87 F.3d 1389, 1393 & n. 3 (D.C.Cir.1996) (en banc); *see also Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C.Cir.1999) (describing the law-of-the-case doctrine). As this Court explained in *LaShawn II*, this doctrine applies to jurisdictional issues, whether those issues were decided " 'explicitly or by necessary implication.' " *LaShawn II*, 87 F.3d at 1394 (quoting *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C.Cir.1995)). Nevertheless, courts are "not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed *sub silentio*." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38, 73 S.Ct. 67, 97 L.Ed. 54 (1952); *see also LaShawn II*, 87 F.3d at 1395 n. 6 (explaining that courts are not "bound by decisions on questions of jurisdiction made *sub silentio* in previous cases 'when a subsequent case finally brings the jurisdictional issue' to the Court" (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 119, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984))).

Although some portions of the *IPAA I* decision may be read to suggest that IPAA challenged the *Samedan* decision, the question of whether IPAA had challenged that decision was not before us, nor decided by us, even by implication. Any confusion read into our earlier opinion stems from the fact that this issue was not cleanly raised. Now that we are able to consider IPAA's claim standing alone, we are able to make a precise determination concerning its content and its justiciability. Indeed, as explained above, its content is clear, and it is not justiciable. Consequently, the District Court stood on firm ground in considering whether IPAA had challenged final agency action and holding that it did not. Like the District Court, we do no harm to the law of this Circuit

nor the law of this case by considering this issue today, with the question placed squarely before us uncluttered by other claims or cases.

▮▮ In a footnote buried on the nineteenth page of its reply brief, IPAA makes one last effort to litigate its claim, requesting leave to amend its complaint to include a challenge to the *Samedan* decision. *See* 28 U.S.C. § 1653. We deny this request. IPAA points out that this Court granted leave to amend following a motion made at oral argument in *DKT Memorial Fund, Ltd. v. Agency for International Development*, 810 F.2d 1236, 1239 (D.C.Cir.1987). The unique circumstances of *DKT* belie its applicability in other cases. *DKT*'s singular holding was limited to the facts of a discrete case dealing with international affairs. *See id.* at 1238–39. In that case, leave to amend was constrained to a single factual allegation—a factual allegation that the plaintiffs inadvertently omitted—that clarified the plaintiffs' standing in an area where "current precedent does not conclusively indicate whether" such a party has standing. *Id.* at 1239. The *DKT* Court made plain that the appellants' omission had been inadvertent and that, based on the facts of the case, granting leave to amend was in the public interest. *See id.*

While it is possible that, like the appellants in *DKT*, IPAA's failure to amend its pleading at an earlier stage in this litigation may have been "more inadvertent than deliberate," *id.* at 1239, unlike in *DKT*, IPAA fails to articulate what "interest of justice" would be served by allowing it to amend its complaint now, roughly seven years after it filed the original complaint and six years after DOI issued the *Samedan* decision. Additionally, in contrast to the *DKT* appellants, who merely sought to amend their claim to add a single factual allegation, IPAA seeks to add an entirely new claim. However, as we have said before, new claims "cannot set sail, initially, on appeal if courts are to operate with reasonable speed and efficien-

cy." *Shipbuilders Council of Am. v. United States,* 868 F.2d 452, 456 n. 2 (D.C.Cir.1989).

Finally, we question whether IPAA's amendment would "convert their action into a justiciable case." *Id.* Instead, permitting IPAA to amend its claim likely would lead this Court into a jurisdictional morass. *See, e.g., Abbott Labs. v. Gardner,* 387 U.S. 136, 148–54, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Student Loan Mktg. Ass'n v. Riley,* 104 F.3d 397, 406–07 (D.C.Cir.1997); *Shell Oil Co. v. FERC,* 47 F.3d 1186, 1201–02 (D.C.Cir.1995); *Aeronautical Radio, Inc. v. FCC,* 983 F.2d 275, 284 (D.C.Cir.1993); *Shipbuilders Council,* 868 F.2d at 456; *Radiofone, Inc. v. FCC,* 759 F.2d 936, 939 (D.C.Cir.1985) (Scalia, J., opinion). Accordingly, we are compelled to deny IPAA's request.

## III. CONCLUSION

For the reasons stated above, the District Court's judgment is

*Affirmed.*