CHADMOORE COMMUNICATIONS,
INC., Appellant

v.

FEDERAL COMMUNICATIONS
COMMISSION, Appellee.

No. 96–1061.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 5, 1996.

Decided May 20, 1997

Marjorie K. Conner, with whom Walter E. Steimel, Jr., was on the briefs, argued the cause for appellant.

C. Grey Pash, Jr., Counsel, Federal Communications Commission ("FCC"), with whom William E. Kennard, General Counsel, and Daniel M. Armstrong, Associate General Counsel, FCC, Washington, DC, were on the brief, argued the cause for appellee. John E. Ingle, Deputy Associate General Counsel, FCC, Washington, DC, entered an appearance.

Before SILBERMAN and HENDERSON, Circuit Judges, and BUCKLEY, Senior Circuit Judge.

Opinion for the court filed by Senior Circuit Judge BUCKLEY.

Separate concurring opinion filed by Circuit Judge SILBERMAN.

BUCKLEY, Senior Circuit Judge:

Chadmoore Communications, Inc. appeals the denial of its application for an "extended implementation period" of three years for the construction of a "wide-area specialized mobile radio" system. Because the Federal Communications Commission was entitled to take into account the adverse impact that the grant of the application would have had on a newly adopted policy governing the construction of such systems, we conclude that its denial of the application was neither arbitrary nor capricious.

## I. BACKGROUND

Specialized mobile radio ("SMR") systems are commercially operated private communication systems that employ mobile transmitting and/or receiving stations. *National Ass'n of Regulatory Util. Comm'rs v. FCC*, 525 F.2d 630, 634 (D.C.Cir.1976). In the beginning, these systems were used primarily to provide highly localized services, such as the radio dispatching of police cars and taxicabs. *Id.* In recent years, however, emerging SMR technologies have enabled licensees to offer their customers sophisticated voice and data transmission services over extensive areas (e.g., two-way acknowledgment paging, credit card authorization, automatic vehicle location, remote database access, and voice mail).

The Federal Communications Commission ("FCC" or "Commission") has allocated fourteen megahertz ("MHz") of spectrum in the 800 MHz band exclusively to SMR systems. This spectrum has been divided into 280 frequency channels, 200 of which are contained in a contiguous ten MHz block ("upper 200"). The remaining eighty channels are divided into eight non-contiguous blocks ("lower 80"). *See Further Notice of Proposed Rule Making ("Further NPRM")*, Docket 93–144, 10 F.C.C.R. 7970, 7974 (1994).

Originally, the FCC issued licenses by ascertaining whether an application satisfied certain criteria. *See generally* 47 C.F.R. § 90.621 (1995). Licensees of the 280 SMR-only channels were assigned either one or five channels at a time on a station-by-station basis. *Further NPRM*, 10 F.C.C.R. at 7975. As a general rule, stations operating on the same channel must be a minimum of seventy miles apart. 47 C.F.R. § 90.621(b). With the advent of new technologies, however, SMR service operators became interested in packaging large numbers of stations for the purpose of creating systems that could serve vast geographic areas. Because of the expense and complexity associated with the creation of these systems, the FCC modified its regulations to make applicants eligible for "extended implementation authority," which would extend the periods within which the applicants' wide-area systems would have to be completed. *In the Matter of Amendment of Part 90 of the Commission's Rules Governing Extended Implementation Periods, Report and Order*, 8 F.C.C.R. 3975 (1993). Whereas an SMR licensee was normally expected to complete the construction of a station within eight or twelve months, 47 C.F.R. §§ 90.155(a) and 90.631(f), the Commission would now allow a qualified applicant up to five years to complete construction of a system. *Id.* § 90.629.

In August 1993, Congress amended the Communications Act to create two categories of mobile service—commercial mobile radio service ("CMRS") and private mobile radio service; and it directed the Commission to implement these categories in its regulations and provide for comparable regulation of substantially similar CMRS systems. *See* 47 U.S.C. § 332. The FCC subsequently classified any wide-area SMR system offering interconnected service for profit, such as the one Chadmoore proposed, as a CMRS. *Second Report and Order*, GN Docket No. 93–252, 9 F.C.C.R. 1411, 1450–51 ¶¶ 88–93 (1994).

The FCC then began to amend its existing regulations to treat SMR and CMRS systems alike; and in its *Further NPRM*, the FCC initiated a rulemaking to implement a framework for licensing SMRs that would facilitate development of wide-area, multi-channel SMR systems in competition with cellular and broadband personal communications services systems. The notice observed that the FCC was relying increasingly on competitive bidding for the licensing of new SMR ser-

vices. *Further NPRM,* 10 F.C.C.R. at 8006–07. It also proposed two changes with respect to extended implementation authority: first, the Commission would "no longer permit extended implementation under § 90.629 on the 'lower 80' channels." *Id.* at 7996; second, it proposed to add the following as subsection (e) to section 90.629: "SMR Systems licensed after August 9, 1994 will not be eligible for extended implementation periods under this section." *Id.* at 8029. Finally, the notice asked

> commenters to discuss whether existing licensees with extended implementation periods should be given that full period to construct their systems; or, in the alternative, if they should be given some shorter period unless they submit a detailed showing that construction to date is consistent with their original implementation plan.

*Id.* at 7997. No provision was made for the filing of reply comments.

On June 16, 1995, seven months after the issuance of the November 1994 notice, Chadmoore Communications, Inc. ("CCI") filed an application, pursuant to section 90.629, for an extended implementation period of three years within which to complete the construction of a wide-area SMR system comprised of 2,312 stations throughout twenty-six states, extending from the southeastern U.S. through the upper Midwest. Fourteen of these were for stations in the "lower 80." CCI asserted that its application met the requirements of section 90.629 and that the grant of its request would be consistent with the FCC's precedent, would promote competition for the entire SMR industry, and would not disturb the pool of facilities available for the Commission's proposed competitive bidding proposals.

The FCC staff sought comments on whether the request should be granted. *See Public Notice,* DA 95–1613 (July 19, 1995) ("*Public Notice*"). The commenters uniformly opposed the application, arguing that CCI had had sufficient time to construct its stations and that, in some instances, its construction deadlines had already been extended by more than a year. Although the Public Notice did not provide for the filing of a response by CCI, on September 12, 1995,

CCI moved for the acceptance of "reply comments" that it submitted with its motion. The FCC did not rule on the motion, nor did it consider CCI's reply in its subsequent decision to deny its application.

On December 15, 1995, the FCC issued a final rule establishing new criteria for the grant of wide-area SMR licenses ("final rule"). *First Report and Order, Eighth Report and Order, and Second Further Notice of Proposed Rule Making ("December 15, 1995 Order"),* 11 F.C.C.R. 1463 (1995). Among other things, it provided for the award of licenses, via competitive bidding, for blocks of channels within 175 geographic areas called "economic areas" ("EAs"). *See id.* at 1468 n. 3, 1483–84, 1489–90, 1540.

The final rule did not adopt either of the changes proposed in *Further NPRM* with respect to extended implementation authority. Instead, it added a revised subsection 90.629(e) which provides, in pertinent part, that "[a]s of [*March 18, 1996*], Specialized Mobile Radio systems are not eligible for extended implementation periods under this section." *December 15, 1995 Order,* 11 F.C.C.R. at 1634, 1646 (emphasis added); *see also The Future Development of SMR Systems in the 800 MHz Frequency Band,* 61 Fed.Reg. 6138, 6157 (1996) (to be codified at 47 C.F.R. pt. 90). The FCC explained that it had initially established extended implementation authority for SMR service providers in order to facilitate construction of wide-area systems, but that it now believed that extended implementation authority was no longer appropriate because its new licensing plan would accomplish the same result in a more uniform and expeditious fashion. In fact, the agency expressed concern that

> both existing and future grants of extended implementation authority would be contrary to the underlying goals of [the new licensing plan]. Specifically, [the Commission] believe[d] that allowing licensees to retain extended implementation authority of up to five years after [its] adoption of the wide-area licensing approach detailed in [its] *First Report and Order* would impinge upon the construction requirements imposed on EA licensees. For example, within three years of license grant, EA

licensees are required to fulfill their construction requirements, which are based on population coverage and channel usage, regardless of incumbent presence. If certain channels remain unconstructed but authorized to an [sic] another entity for this three-year period, the EA licensee is estopped not only from utilizing the channel(s) directly but also from acquiring it from the holder of the authorization due to [the FCC's] prohibition against the transfer of unconstructed facilities.

*December 15, 1995 Order,* 11 F.C.C.R. at 1524.

The FCC denied CCI's application in the same order. Rather than determining whether CCI satisfied section 90.629's requirements, the FCC concluded that granting "requests for extended implementation authority currently pending ... would conflict with [the FCC's] goal of uniformly implementing wide-area licensing." *Id.* at 1526. CCI filed this appeal without petitioning the FCC for reconsideration.

## II. DISCUSSION

### A. Exhaustion of Administrative Remedies

■ As an initial matter, we must address the FCC's contention that we are barred from reviewing CCI's claims by section 405 of the Communications Act, 47 U.S.C. § 405 (1994), which "codif[ies] the judicially-created doctrine of exhaustion of administrative remedies," *City of Brookings Mun. Tel. Co. v. FCC,* 822 F.2d 1153, 1163 (D.C.Cir.1987) (internal quotation marks and citations omitted). This section provides, in relevant part:

The filing of a petition for reconsideration shall not be a condition precedent to judicial review of any such order, decision, report, or action, except where the party seeking such review ... relies on questions of fact or law upon which the Commission ... has been afforded no opportunity to pass.

47 U.S.C. § 405(a). The purpose of section 405 is to require complainants to give the FCC a "fair opportunity" to pass on a legal or factual argument before coming to this court. *Washington Ass'n for Television & Children v. FCC,* 712 F.2d 677, 681

("*WATCH*") (D.C.Cir.1983) (internal quotation marks and citations omitted).

■ The Commission characterizes CCI's arguments as

essentially variations on the same theme—that because its request for extended implementation authority was filed before the FCC changed the applicable rule, and because it complied with the requirements of the rule when the request was filed, the Commission was bound to grant the request.

Brief for Appellee at 14. It then states that because these arguments were not presented to it, as required by section 405, we may not hear them. That section, however, incorporates "traditionally recognized exceptions to the exhaustion doctrine, [which permit] a reviewing court [to] consider arguments ... [that] would have been futile [for the petitioner] to raise before the agency." *Omnipoint Corp. v. FCC,* 78 F.3d 620, 635 (D.C.Cir.1996) (internal quotation marks and citations omitted).

■ We agree with CCI that it would have been futile for it to have sought a reconsideration of the FCC's denial of its application. In its *December 15, 1995 Order,* the Commission explained:

We initially established extended implementation authority for SMRs to facilitate construction of wide-area systems. We believe that the wide-area licensing plan we adopt today will accomplish this result in a more uniform and expeditious fashion. Consequently, we conclude that the availability of extended implementation authority in the 800 MHz SMR service is no longer necessary. In fact, we are concerned that both existing and future grants of extended implementation authority would be contrary to the underlying goals of this proceeding.... As a result, we believe that it is necessary not only to cease acceptance of requests for extended implementation authority but also to accelerate the termination date of existing implementation periods....

11 F.C.C.R. at 1524–25. It then stated that it was denying the pending requests for extended implementation authority because the

"grant of these requests would conflict with our goal of uniformly implementing wide-area licensing." *Id.* at 1526. At oral argument, the FCC's counsel explained that CCI's request was incompatible with the new licensing framework because of the sheer size of its proposed 2,312-station, twenty-six-state system. Because the Commission had concluded that the grant of CCI's application would have frustrated its ability to implement a new system of licensing that it believed would best serve the public interest, we are satisfied that it would have been futile for CCI to seek reconsideration. Its arguments are therefore properly before us.

B. The Merits

In challenging the FCC's denial of its application, CCI argues (1) that the FCC's denial constituted an impermissible retroactive application of subsection 90.629(e); (2) that because CCI met all the requirements of section 90.629 in force at the time, the Commission's denial was arbitrary and capricious; (3) that the denial was inconsistent with the treatment accorded other applicants for extended implementation authority; and (4) that the FCC erred in failing to consider its reply comments. We address these arguments in turn.

*1. Retroactivity*

CCI contends that the FCC's denial of its application constituted an impermissible retroactive application of subsection 90.629(e), which was not to take effect until March 18, 1996. CCI asserts that, in order to give the revised subsection retroactive effect, it was incumbent on the FCC to "explain how it determined that the balancing of the harms and benefits favor[ed] giving [its] change in policy retroactive application," Brief for Appellant at 26 (quoting *Yakima Valley Cablevision, Inc. v. FCC,* 794 F.2d 737, 746 (D.C.Cir.1986)).

■ CCI has confused the law governing the retroactive application of administrative rules developed, as in *Yakima,* in the course of an agency adjudication with those, such as subsection 90.629(e), that an agency has adopted as the result of a rulemaking under the Administrative Procedure Act ("APA"). As we pointed out in *Georgetown Univ.*

*Hosp. v. Bowen,* 821 F.2d 750, 757 (D.C.Cir. 1987), *aff'd on other grounds, Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988),

the APA requires that legislative rules [i.e., rules adopted pursuant to the notice and comment procedures of the APA, 5 U.S.C. § 553] be given future effect only. [Therefore], equitable considerations are irrelevant to the determination of whether the [agency's] rule may be applied retroactively; such retroactive application is foreclosed by the express terms of the APA.

*See also Bowen,* 488 U.S. at 216, 109 S.Ct. at 475 (Scalia, J., concurring). By contrast, an agency may give retroactive effect to a new policy or rule adopted in the course of an adjudication so long as the resulting inequities are "counterbalanced by sufficiently significant statutory interests." *Georgetown Univ. Hosp.,* 821 F.2d at 756 (citing *Retail, Wholesale and Dep't Store Union v. NLRB,* 466 F.2d 380, 390 (D.C.Cir.1972)); *Yakima,* 794 F.2d at 745–46.

■ It follows from the above that if the FCC had applied subsection 90.629(e) retroactively in this case, that would be the end of the matter because a legislative rule may only be applied prospectively. We are not persuaded, however, that the subsection has been applied retroactively. In the first place, in explaining why it dismissed CCI's application, the Commission made no mention of the subsection. Rather, it stated that to grant the requested extended implementation authority "would be contrary to the underlying goals of this proceeding," *December 15, 1995 Order,* 11 F.C.C.R. at 1524, which were to put into effect a new system of competitive bidding that would both improve efficiency and expedite the construction of new wide-area SMR systems.

■ But more significantly, the subsection does not meet the test we commonly use to determine whether a rule has retroactive effect: it does not " 'impair[ ] rights a party possessed when [it] acted, increase[ ] a party's liability for past conduct, or impose[ ] new duties with respect to transactions already completed.' " *DIRECTV, Inc. v. FCC,* 110 F.3d 816, 825–26 (D.C.Cir.1997) (quoting

*Landgraf v. USI Film Prods.,* 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994)). In this case, the Commission's action did not increase CCI's liability for past conduct or impose new duties with respect to completed transactions. Nor could it have impaired a right possessed by CCI because none vested on the filing of its application. *Cf. Hispanic Info. & Telecomms. Network v. FCC,* 865 F.2d 1289, 1294–95 (D.C.Cir.1989) ("The filing of an application creates no vested right to a hearing; if the substantive standards change so that the applicant is no longer qualified, the application may be dismissed."); *Schraier v. Hickel,* 419 F.2d 663, 667 (D.C.Cir.1969) (filing of application that has not been accepted does not create a legal interest that restricts discretion vested in agency). Accordingly, we conclude that section 90.629(e) did not have retroactive effect.

The proper question, then, is whether the FCC acted arbitrarily or capriciously or otherwise contrary to law when it invoked the prospective change in policy as a sufficient reason for denying an application under a regulation that was at the time still in effect and whose conditions CCI had at least facially met.

*2. Was the denial arbitrary and capricious?*

■■■ The scope of review under APA's "arbitrary and capricious" standard

is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. In reviewing that explanation, [a court] must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... [A court] will, however, uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (internal quotation marks and citations omitted).

CCI maintains that we must find the Commission's denial of its application to be arbitrary and capricious because the agency neither determined whether the company had satisfied section 90.629's requirements for extended implementation nor explained why it was not required to do so. In addressing the equities, CCI stresses that in reliance on that section (which was still in effect when the FCC denied its application), the company had invested significant time, effort, and capital in designing a unique SMR system comprised of thousands of stations and in securing the cooperation of the licensees of stations participating in the system. Finally, CCI contends that it was not on notice that its application would be incompatible with the new rule because, when the FCC proposed changes in its licensing scheme in November 1994, it spoke of eliminating extended implementation authority only on the lower 80 channels and on SMR systems licensed after August 9, 1994. *Further NPRM,* 10 F.C.C.R. at 7996, 8029. Because none of the licenses involved in its application were issued after that date, CCI states that it was only on notice that the fourteen channels located in the lower 80 might be affected by the new rule.

■■■ CCI's reading of *Further NPRM* is far too narrow. When the notice is viewed in its entirety, it becomes clear that the central purpose of the proposed rulemaking was to create a new framework for wide-area SMR licensing that was likely to affect the FCC's policy with respect to existing and pending authorizations for extended implementation. Furthermore, CCI was placed on specific notice that in furtherance of that goal, the Commission not only proposed to deny applications relating to licenses in the lower 80 and those awarded after August 9, 1994, but that it had under consideration the curtailment of existing grants of authority. *See id.* at 7997 ("[W]e request comment on how *existing* licensees with extended implementation periods should be treated.... We ask commenters to discuss whether *existing* licensees with extended implementation periods should be given that full period to construct their systems ....") (emphasis added). Thus, when CCI filed its application

seven months after the issuance of *Further NPRM*, it should have been aware that the FCC was embarking on a fundamental restructuring of wide-area SMR licensing procedures that made it imprudent to assume that the agency would continue to grant extensions under section 90.629. *Cf. Adelphia Communications Corp. v. FCC*, 88 F.3d 1250, 1257–58 (D.C.Cir.1996) (because petitioner had notice that the Commission might change its rules, the new rule "d[id] not impair any substantive right upon which Adelphia was entitled to rely.")

On the other hand, the grant of CCI's application would have significantly frustrated the interests that were to be advanced by the new rule, especially in view of the size of its proposed system. As the FCC explained, the purpose of the rule was to create a new, flexible scheme for SMR service "that [would] allow for more efficient licensing, eliminate unnecessary regulatory burdens on both existing and future licensees, and thereby enhance the competitive potential of SMR services in the mobile services marketplace." *Further NPRM*, 10 F.C.C.R. at 7973. Having concluded that both existing and future grants of extended implementation authority would be "contrary to the underlying goals" of this rulemaking, *December 15, 1995 Order*, 11 F.C.C.R. at 1524, it was entirely reasonable for the Commission to deny CCI's application.

### 3. Disparate treatment

We have long held that an agency must provide an adequate explanation before it treats similarly situated parties differently. *Petroleum Communications, Inc. v. FCC*, 22 F.3d 1164, 1172 (D.C.Cir.1994) (and cases cited therein). This rule was developed to prevent an agency from, *inter alia*, "vacillat[ing] without reason in its application of a statute or the implementing regulations." *New Orleans Channel 20, Inc. v. FCC*, 830 F.2d 361, 366 (D.C.Cir.1987).

CCI contends that the FCC acted arbitrarily and capriciously because the agency's treatment of its application was inconsistent with that accorded other similarly situated applicants. According to the company, the Commission granted hundreds of requests for extended implementation periods be-

tween May 13, 1993, when it issued *Further NPRM*, and December 15, 1995, when the FCC denied its request. In particular, CCI points to two applications that the FCC received on May 8, 1995 (just five weeks prior to CCI's application) and granted twenty-three days later, on May 31. The first of these was filed by Spectrum Resources, Inc., which requested five years to construct eleven SMR stations in four states. The second, filed by Spectrum Resources of the Northeast, Inc., sought five years to build four stations in two states. CCI failed to mention, however, that the letters granting these applications contained the following *caveat:* "The five year extended implementation period ... is granted **conditionally** on the outcome of the Further Notice of Proposed Rule Making, PR Docket No. 93–144." Letters dated May 31, 1995, from Terry L. Fishel, Chief, Land Mobile Branch, Federal Communications Commission, *reprinted in* Supplement to Deferred Joint Appendix at 486 and 492 (emphasis in original).

■ On the record before us, it is not possible to determine whether those conditional authorizations were withdrawn following the issuance of the *December 15, 1995 Order*. But even if the Commission did not revoke the extensions, we find CCI's contention without merit because the applicants were not "similarly situated." CCI's application covered 2,312 stations in twenty-six states while the others' were limited, respectively, to eleven stations in four states and four stations in two states. Furthermore, the FCC granted the relatively modest Spectrum requests at a time when it was still reexamining its position regarding the grant of extended implementation authority. Therefore, it cannot be said that the Commission acted inconsistently when, six months later and after the new policy had been adopted, the Commission took it into account in deciding to deny CCI's application.

### 4. Reply comments

CCI's final contention is that once the FCC requested comments on its application, *see Public Notice*, DA 95–1613 (July 19, 1995), it was entitled to an opportunity to

reply to them even though the notice made no provision for a response. CCI provides no support for that proposition and has not shown that it was prejudiced by the agency's failure to consider its response. Accordingly, we find this contention without merit.

### III. CONCLUSION

For the reasons set forth above, the FCC's order denying CCI's application for extended implementation authority is

*Affirmed.*

SILBERMAN, Circuit Judge, concurring:

I concur in the majority's disposition of the merits. As to the exhaustion issue, I agree that Chadmoore's argument is not barred by its failure to raise it in a petition for reconsideration before the Commission. In so concluding, however, I would prefer to rely on *MCI Telecomm. Corp. v. FCC,* 10 F.3d 842 (D.C.Cir.1993), rather than on the futility exception, which is a stretch here.