# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 12, 2020    Decided April 7, 2020

No. 19-1210

BOARD OF COUNTY COMMISSIONERS OF WASHINGTON COUNTY, MARYLAND AND HAGERSTOWN REGIONAL AIRPORT, PETITIONERS

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION AND ELAINE L. CHAO, IN HER OFFICIAL CAPACITY AS SECRETARY OF TRANSPORTATION, RESPONDENTS

---

On Petition for Review of Orders of the
United States Department of Transportation

---

*M. Roy Goldberg* argued the cause for petitioners. With him on the briefs was *M. Denyse Zosa*.

*Charles E. Enloe*, Trial Attorney, U.S. Department of Transportation, argued the cause for respondents. With him on the brief were *Michael F. Murray*, Deputy Assistant Attorney General, U.S. Department of Justice, *Robert B. Nicholson* and *Bryan J. Leitch*, Attorneys, *Paul M. Geier*, Assistant General Counsel, U.S. Department of Transportation, and *Peter J. Plocki*, Deputy Assistant General Counsel.

Before: ROGERS and WILKINS, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*: Petitioners Hagerstown Regional Airport and the Board of County Commissioners of Washington County, Maryland seek review of the Department of Transportation's determination that Hagerstown Airport was not eligible for federally subsidized air service because it did not meet the statutory "enplanement" requirement (the number of passengers boarding at the location). This, in effect, means that Southern Airways (apparently a major carrier at Hagerstown) will not receive subsidies for its service there.[1] We defer to the Department's decision not to waive the airport's failure to meet the enplanement requirement, and we therefore reject the petition.

## I.

Congress established the essential air service program to subsidize air carriers serving smaller communities that would otherwise lack such service because of insufficient demand. *See Mesa Air Grp., Inc. v. Dep't of Transp.*, 87 F.3d 498, 500 (D.C. Cir. 1996). To qualify as an "eligible place" for the program, a community must meet a number of requirements. 49 U.S.C. § 41731(a). As relevant here, communities within 175 driving miles of a large or medium hub airport must demonstrate they "had an average of 10 enplanements per service day or more, as determined by the Secretary, during

---

[1] The airport and its Washington County owners have Article III standing because if Southern Airways loses its subsidies, the airport will suffer significant economic loss.

the most recent fiscal year beginning after September 30, 2012." *Id.* § 41731(a)(1)(B). As noted, enplanements are the number of passengers in the community in question that board flights operated by carriers that are eligible to receive the program subsidies. *Id.* § 41731(f). Even where a community does not meet the enplanement standard, the Secretary "may waive" the requirement on an annual basis if the community "demonstrates to the Secretary's satisfaction" that the reason the location averages under 10 enplanements per day is due to a "temporary decline." *Id.* § 41731(e).

Hagerstown Regional Airport is located in Washington County, Maryland and is within 80 miles of three large hub airports: Washington Dulles International Airport, Baltimore/Washington International Thurgood Marshall Airport, and Ronald Reagan Washington National Airport. Since the enplanement requirement went into effect, Hagerstown fell well below the 10-enplanement standard in four out of the five years leading up to fiscal year 2018. However, the Department granted the airport a waiver of the requirement each year it fell short. Unfortunately, for fiscal year 2018, Hagerstown again failed to meet the requirement, with a daily average of 7.9 enplanements. This time, on August 23, 2019, however, the Department declined to grant the airport a waiver. The Department concluded that Hagerstown had failed to demonstrate to the Department's satisfaction that its shortfall was due to a temporary decline in enplanements, in light of Hagerstown's history of noncompliance as well as its proximity to three major hub airports. The order denying waivers terminated Hagerstown's eligibility for the subsidy program.

The petitioners sought reconsideration, relying on a purported increase in enplanement numbers during fiscal year 2019, and contending that Hagerstown's situation was

virtually identical to that of Victoria, Texas—a community for which the Department *did* grant a waiver. The Department affirmed its prior decision; it reiterated its earlier reasoning for withholding a waiver from Hagerstown and distinguished the circumstances of Victoria, Texas. Hagerstown and the Board of Washington County Commissioners now seek review.

## II.

It is undisputed that Hagerstown Airport did not meet the statutory enplanement requirement for fiscal year 2018, or in four out of the previous five years. The petitioners argue that it was arbitrary and capricious for the Department to refuse to grant the airport a waiver as it had done four times previously, in part because the decision was inconsistent with those prior waivers, and in part because the Department did not consider all of the evidence the petitioners offered to demonstrate that the decline in enplanements at the airport was temporary. Moreover, as they contended when seeking rehearing, the petitioners claim that the Department's grant of a waiver to Victoria, Texas demonstrated that its decision regarding Hagerstown was unreasonable.

The Department responds initially that its decision is not subject to judicial review because, in its view, § 41731(e) grants the Secretary complete discretion as to whether to waive the enplanement requirement. Therefore, the Department contends, there is effectively no law for us to apply. *See Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002); 5 U.S.C. § 701(a)(2).

To be sure, the statutory language, which speaks in terms of "the Secretary's satisfaction," clearly limits the scope of our review. 49 U.S.C. § 41731(e). But the Department goes too far to say that there is no law for us to apply, because

there is an objective standard governing the Secretary's waiver decision: whether the location's failure to meet the enplanement requirement is due to a temporary decline in enplanements. *Id.*; *cf. Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1401–04 (D.C. Cir. 1995). The "statutory reference point" in this case is thus more than merely "the [Secretary's] own beliefs." *Drake*, 291 F.3d at 72. The inquiry does involve, as we discuss below, predictive judgments, but whether a record supports the conclusion that a decline in enplanements is "temporary" is susceptible to judicial review. For instance, if the Secretary were to refuse a waiver simply because she disfavored the section of the country in which an airport was situated, or if she treated identical airports differently, we have little doubt that we would reject her decision. *Cf. Conn. Dep't of Children & Youth Servs. v. Dep't of Health & Human Servs.*, 9 F.3d 981, 985–86 (D.C. Cir. 1993).[2]

Our scope of review would nevertheless be limited even if the statute did not refer to "the Secretary's satisfaction," since the Department's decision deals with an agency's authority to waive a statutory requirement. An agency's decision whether to grant a waiver excusing a violation of a standard, like a decision to choose a particular remedy for a violation of a statute or a rule, is one that carries policy implications, and therefore should be given considerable deference. *See City of Angels Broad., Inc. v. FCC*, 745 F.2d 656, 663 (D.C. Cir. 1984); *see also Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185 (1973).

Turning to the specific arguments the petitioners raise, we are unconvinced by the contention that the Department

---

[2] The government's reliance on *Lincoln v. Vigil*, 508 U.S. 182 (1993), accordingly is misplaced. *Lincoln* involved a lump-sum appropriation without standards governing how the funds in question were to be allocated. *Id.* at 192–94.

acted arbitrarily because it had been so forgiving in the past. Apparently "no good deed goes unpunished." Under the petitioners' theory, it seems the Department would be obliged to grant Hagerstown a waiver of the enplanement requirement perpetually. But the Department was entitled to credit Hagerstown's explanations and predictions less after another year of noncompliance.

The petitioners did present evidence to the Department that they claim showed that Hagerstown Airport would meet the enplanement standard after fiscal year 2018. They pointed to purported enplanement numbers from fiscal year 2019, updated in their petition for reconsideration. They claimed that a relatively new interline agreement between Southern Airways and American Airlines would attract more passengers. And they stated that Southern Airways had become more reliable by recruiting and maintaining a stable supply of pilots. The Department acknowledged these contentions, but it relied on the airport's unsatisfactory past record and the unfortunate fact that the airport is so close to three major hubs. The Department evidently concluded that Hagerstown's history and location outweighed all of the other points the petitioners had raised.[3]

Essentially, the task facing the Department was to make a prediction about future facts. That brings to the fore another ground for deference—as if another one was needed. Both the Supreme Court and our court have recognized that agencies should be given a wide berth when making predictive judgments. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52, 53 (1983); *U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 707 (D.C.

---

[3] The petitioners also stated that local advertising had increased the number of enplanements at Hagerstown and that more advertising was in the works, but that is hardly persuasive evidence.

Cir. 2016). Again, that is so because such predictions are policy-laden, and courts are not well equipped to second-guess agency estimates, especially where those estimates fall within the field of an agency's expertise. The Department's view that Hagerstown's history of noncompliance and its location are superior predictors of future enplanement numbers is reasonable and therefore is entitled to deference.

Finally, there is the petitioners' contention that the Department's treatment of Hagerstown is inconsistent with its decision to grant a waiver to the community of Victoria, Texas. The agency's short and completely adequate answer was that (1) Victoria has a new air service carrier "with increased frequency and service to a new hub," and (2) Victoria is 119 miles away from the nearest medium or large hub, whereas Hagerstown is within 80 miles of three large hub airports, which does not bode well for its future traffic. App. at 200. It was reasonable for the Department to rely on these factors in distinguishing Victoria from Hagerstown.[4]

\* \* \*

For the foregoing reasons, we deny the petition for review.

*So ordered.*

---

[4] The petitioners also claim that Hagerstown Airport's fiscal year 2019 enplanements satisfied the enplanement requirement, rendering the airport eligible for the essential air service program even without a waiver. But the Department properly evaluated Hagerstown's enplanements concerning fiscal year 2018, as its order terminating Hagerstown's eligibility was issued on August 23, 2019, before fiscal year 2019 was complete.