# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 11, 2023          Decided July 7, 2023

No. 22-1260

INTELLISTOP INC.,
PETITIONER

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION, ET AL.,
RESPONDENTS

———

On Petition for Review of an Order
of the Federal Motor Carrier Safety Administration

———

*Stephen J. Obermeier* argued the cause for petitioner. With him on the briefs were *Jeremy J. Broggi* and *Boyd Garriott.*

*Casen B. Ross*, Attorney, U.S. Department of Justice, argued the cause for respondents. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Abby C. Wright*, Attorney, *John E. Putnam*, General Counsel, U.S. Department of Transportation*, Paul M. Geier*, Assistant General Counsel for Litigation and Enforcement, *Charles E. Enloe*, Trial Attorney, and *Charles J. Fromm*, Deputy Chief Counsel, Federal Motor Carrier Safety Administration.

Before: HENDERSON, PILLARD and PAN, *Circuit Judges*.

Opinion for the Court filed PER CURIAM.

PER CURIAM: The Federal Motor Carrier Safety Administration (FMCSA) requires by regulation every commercial motor vehicle operated by a motor carrier to maintain steady-burning exterior lamps, or lights, unless the light at issue is covered by an exemption listed in the regulation, 49 U.S.C. § 113(a), (f); 49 C.F.R. § 393.25(e), or a temporary exemption to the regulation is granted, 49 U.S.C. § 31315(b).[1] To grant a temporary exemption, the FMCSA must determine the exemption "would likely achieve a level of safety that is equivalent to, or greater than, the level that would be achieved absent such exemption." 49 U.S.C. § 31315(b)(1); *see* 49 C.F.R. § 381.310.

Intellistop, Inc. (Intellistop) invented and sells a module that fits into a commercial motor vehicle's existing brake light system and pulses the brake lights with each application of the brakes. Because the module replaces the steady-burning lights with pulsing lights when installed, Intellistop applied for an exemption. The FMCSA denied Intellistop's application and Intellistop now petitions for review, arguing that the FMCSA's decision was arbitrary and capricious. As detailed *infra*, we deny Intellistop's petition.

---

[1] A "commercial motor vehicle" means a "self-propelled or towed vehicle used on highways in interstate commerce to transport passengers or property" that, as applicable here, "has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater." 49 U.S.C. § 31132(1); 49 C.F.R. § 390.5.

3

**I.**

The FMCSA "prescribe[s] minimum safety standards" via its federal motor carrier safety regulations (FMCSRs) to ensure that commercial motor vehicles are "maintained, equipped, loaded, and operated safely." 49 U.S.C. § 31136(a)(1); *see also id.* § 113(a), (f)(1). The FMCSR relevant here requires that all exterior lights on commercial motor vehicles "shall be steady-burning." 49 C.F.R. § 393.25(e). Turn signal lights and hazard warning signal lights, as well as warning lights on school buses, tow trucks, vehicles transporting oversized loads, government service vehicles and emergency responding vehicles, are not subject to the steady burn requirement. *Id.*

The FMCSA "may grant" a renewable exemption to a FMCSR for up to five years if it "finds such exemption would likely achieve a level of safety that is equivalent to, or greater than, the level that would be achieved absent such exemption." 49 U.S.C. § 31315(b)(1), (2). It monitors the exemptions it grants because, if a party fails to comply with the terms of its exemption or the FMCSA learns that the exemption has resulted in a lower level of safety, it immediately revokes an exemption. 49 U.S.C. § 31315(b)(4)(B).

The Congress separately established and empowered the National Highway Traffic Safety Administration (NHTSA), also within the Department of Transportation, to promulgate federal motor vehicle safety standards (FMVSSs) that apply to all motor vehicles, including commercial motor vehicles. *See* 49 U.S.C. §§ 105(d), 30102(a)(7), 30111(a). A motor vehicle that does not meet the NHTSA's safety standards cannot be manufactured, sold or introduced in interstate commerce. *Id.* § 30112(a)(1). The NHTSA maintains an FMVSS that, like the

FMCSA regulation, requires steady-burning brake lights on all motor vehicles. 49 C.F.R. § 571.108 (Table I-a), (Table I-b).[2]

Intellistop's module pulses a commercial motor vehicle's existing rear clearance, identification and brake lights from a lower-level lighting intensity to a higher-level lighting intensity four times in under two seconds when the brakes are applied. Its module can be put into the preexisting brake light circuit of any trailer and does not require additional equipment. According to Intellistop, the rapid pulsing alerts a driver that a vehicle in front of him is slowing down or coming to a stop and therefore prevents rear-end collisions. Intellistop's prospective customers, however, thought that Intellistop's module could conflict with the FMCSA's "steady-burn" regulation, 49 C.F.R. § 393.25(e). And thus, in 2020, Intellistop applied for an exemption "on behalf of all motor carriers." J.A. 18.

In 2022, the FMCSA denied Intellistop's application after concluding that Intellistop had not provided sufficient information to demonstrate that an exemption for its module would produce a level of safety equivalent to the steady-burn regulation. Parts and Accessories Necessary for Safe Operation; Application for an Exemption From Intellistop, Inc. (FMCSA Decision), 87 Fed. Reg. 61133, 61136 (Oct. 7, 2021). In its decision, the FMCSA acknowledged that pulsing brake lights had the potential to "improve attention getting" of a driver following a commercial motor vehicle and consequently to lower the risk of a rear-end collision. *Id.* It noted that

---

[2] The FMVSS defines stop lamps, or brake lights, as "lamps giving a steady light to the rear of a vehicle to indicate a vehicle is stopping or diminishing speed by braking" and requires that all produced motor vehicles have two red brake lights on the rear. 49 C.F.R. § 571.108 (Table I-a) (requiring steady-burning brake lights on all trucks), (Table I-b) (requiring steady-burning brake lights on all trailers).

"[g]enerally, Intellistop relied on studies of other lighting configurations proposing to *add additional* pulsating lights rather than altering the performance of the existing brake lights," *id.* (emphasis added), and concluded that "previous research does not address the potential safety benefits or risks of a lighting system that would replace rather than merely supplement a light required by an FMVSS." *Id.*

Critically, the FMCSA weighed the potential "attention getting" safety benefit of Intellistop's module against its concern that Intellistop provided insufficient data showing that the widespread availability of its module would not increase the risk of confusion and distraction among drivers or that the modified brake lights would remain functional in the event that Intellistop's module malfunctioned. *Id.* It saw "a crucial distinction" between Intellistop's application and other exemption applications the FMCSA had approved in that the "other pulsing rear-light exemptions that FMCSA ha[d] previously granted involved the *addition* of non-mandatory auxiliary lighting systems, whereas Intellistop [sought] permission to alter the functionality of original equipment manufacturers' lamps, which are covered by an existing FMVSS." *Id.* (emphasis added). The FMCSA had previously granted four exemptions for pulsing brake lights. All of the four exemptions provided for the installation of an auxiliary light that flashes with each application of a commercial motor vehicle's brakes in addition to the vehicle's steady-burning brake lights.

Because Intellistop's module modified original equipment manufacturers' lights that are covered by an FMVSS, 49 C.F.R. § 571.108, the FMCSA also consulted the NHTSA, the agency that promulgates and implements FMVSSs, FMCSA Decision, 87 Fed. Reg. at 61136. After that consultation, the FMCSA concluded that Intellistop had not

supplied sufficient data to address its concerns, especially in the context of an exemption for the entire motor carrier industry. *Id*. The FMCSA stated that it would consider "separate applications for exemption from individual motor carriers or motor carrier trade groups" interested in using Intellistop's product on their commercial motor vehicles as the exemptions would be narrower and would "more closely align[] FMCSA's exemption granting practice with the Motor Vehicle Safety Act administered by NHTSA." *Id.* Intellistop timely petitioned for review of the FMCSA's decision.

## II.

Intellistop first contends that the FMCSA arbitrarily ignored unrebutted empirical research cited in its application that shows pulsing brake lights have the potential to reduce rear-end collisions and improve traffic safety. Second, Intellistop claims that the FMCSA distinguished its application from exemptions granted in the past, which exemptions used the same studies Intellistop relied on in its application, and thus arbitrarily treated similarly situated parties differently. Finally, Intellistop disputes the FMCSA's claim that it could not adequately monitor Intellistop's modules, as required under 49 U.S.C. § 31315(b)(4), notwithstanding it currently monitors similarly broad exemptions.

We review whether the FMCSA acted "arbitrarily or capriciously, abused its discretion, or acted contrary to law" in denying Intellistop's exemption application. *United Airlines, Inc. v. TSA*, 20 F.4th 57, 62 (D.C. Cir. 2021) (quoting *Alaska Airlines, Inc. v. TSA*, 588 F.3d 1116, 1120 (D.C. Cir. 2009)); *see also* 5 U.S.C. § 706(2)(A). We ordinarily defer to an "agency's decision whether to grant a waiver excusing a violation of a standard," noting that "the Supreme Court and our court have recognized that agencies should be given a wide

berth when making predictive judgments." *Bd. of Cnty. Comm'rs v. U.S. Dep't of Transp.*, 955 F.3d 96, 99 (D.C. Cir. 2020). At the same time, we evaluate whether the agency reasonably exercised its discretionary authority "and, just as importantly, reasonably explained" its decision. *United Airlines*, 20 F.4th at 62; *see also FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021) ("The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained. . . . A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision."). "[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943).

We believe the FMCSA acted reasonably in denying Intellistop's exemption and adequately explained that Intellistop provided insufficient data "to support a blanket exemption for industry to alter the performance of a required lamp covered by the FMCSRs and FMVSSs." FMCSA Decision, 87 Fed. Reg. at 61136 (footnote omitted); *see United Airlines*, 20 F.4th at 62. Under both 49 U.S.C. § 31315(b) and FMCSA regulations, Intellistop was required to provide the FMCSA with an "analysis of the safety impacts the requested exemption may cause." 49 U.S.C. § 31315(b)(5)(C); *see also* 49 C.F.R. § 381.310(c) (applicant "must provide a written statement that . . . [e]xplains how you would ensure that you could achieve a level of safety that is equivalent to, or greater than, the level of safety that would be obtained by complying with the regulation."). The FMCSA found Intellistop's data insufficient for it to determine that the requested exemption would result in a level of safety equivalent to that required by its regulations. *See* FMCSA Decision, 87 Fed. Reg. at 61135

("While the agency recognize[d] the existing data that supports the potential safety value of alternative rear-signaling systems in general, it [was] also mindful of the data deficiencies in this area."). The FMCSA first cited Intellistop's failure to provide data showing that industry-wide pulsing of existing (that is, steady-burn) brake lights, rather than *supplemental* pulsing lights, would not cause driver confusion or distraction. *See id.* ("Data deficiencies include the effect on nearby drivers if many vehicles on a roadway are equipped with pulsing brake lights . . . ."); *id.* at 61136 ("Intellistop did not provide data . . . regarding the distraction, confusion, or safety effects of large numbers of trucks being so equipped."). Second, the FMCSA emphasized that Intellistop provided no data to demonstrate "that the installation of the device would safely interact with the [commercial motor vehicle's] existing systems or to support its claim that a malfunction of the Intellistop device would result in the brake lights returning to [original equipment manufacturer] functionality, in conformance with the required FMVSS." *Id.* at 61136.

According to Intellistop, the FMCSA ignored or mischaracterized the studies Intellistop cited in its exemption application to support the safety benefits of its technology. *See Butte Cnty v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) ("[A]n agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action within the meaning of § 706."); *Genuine Parts Co. v. EPA*, 890 F.3d 304, 313 (D.C. Cir. 2018) ("It was arbitrary and capricious for [the agency] to rely on portions of studies in the record that support its position, while ignoring cross sections in those studies that do not."). We disagree.

First, the FMCSA did not ignore or mischaracterize the potential "attention getting" safety benefit of pulsing brake lights reported in the studies Intellistop cited. The FMCSA

acknowledged the potential safety benefits of pulsing brake lights reported in the studies Intellistop cited. *See* FMCSA Decision, 87 Fed. Reg. at 61135 ("FMCSA believes that the two agencies' [i.e., NHTSA's and FMCSA's] previous research programs demonstrate that rear-signaling systems may be able to 'improve attention getting' to reduce the frequency and severity of rear-end crashes[.]"); *id.* at 61136 ("Previous research programs demonstrate the potential effectiveness of rear-signaling systems to 'improve attention getting' to reduce the frequency and severity of rear-end crashes[.]").

Second, and more importantly, the FMCSA reasonably determined that the studies Intellistop cited in its application did not address the fundamental informational deficiencies the FMCSA had identified—its concern regarding widespread driver confusion stemming from the rapid introduction of pulsing brake lights across the motor carrier industry and its concern that Intellistop's module altered the performance of original equipment manufacturers' lights covered by a FMVSS. *See id.* at 61136. Intellistop argues that the FMCSA misstated or ignored the conclusions of two NHTSA studies from 2009 and 2010 that evaluated the safety benefits and risks of pulsing existing brake lights. The studies reported greater "attention getting" and faster braking response times from drivers if an experimental brake light system, installed in the same location as a standard vehicle's brake lights, pulsed compared to the steady-burning system. J.A. 112 (2010 NHTSA static study's summary of conclusions), 261–62 (2009 NHTSA study's summary of conclusions). The 2009 NHTSA study also analyzed whether neighboring drivers excessively braked or swerved in response to the experimental vehicle's pulsing brake lights and reported "relatively few instances of undesirable or erratic behaviors" in response thereto. J.A. 259 (2009 NHTSA Study). Thus, Intellistop contends, the FMCSA

either arbitrarily misstated or ignored the studies by determining that no previous research had evaluated the safety benefits or risks of replacing steady-burn brake lights as opposed to supplementing them. *See Genuine Parts Co.*, 890 F.3d at 313.

But the studies Intellistop claims the FMCSA misstated or ignored in its decision did not address the bases of the FMCSA's decision. FMCSA Decision, 87 Fed. Reg. at 61135–36. Those studies evaluated the potential "attention getting" of pulsing brake lights but did not address whether the technology Intellistop employed would "safely interact with the [commercial motor vehicle's] existing systems" or "[whether] a malfunction of the Intellistop device would result in the brake lights returning to [original equipment manufacturer's] functionality." *Id.* at 61136. Nor did those studies address the potential for driver distraction related to the *number* of commercial motor vehicles with pulsing brake lights under Intellistop's requested industry-wide exemption by merely analyzing driver distraction caused by one experimentally modified passenger vehicle with pulsing brake lights. *See id.* at 61135 ("Data deficiencies include the effect on nearby drivers if *many* vehicles on a roadway are equipped with pulsing brake lights . . . .") (emphasis added), 61136 ("Intellistop did not provide data specific to the use of its module which pulses the existing brake lamps rather than the use of additional lamps . . . or regarding the distraction, confusion, or safety effects of *large numbers of trucks being so equipped*.") (emphasis added). Although the FMCSA previously granted an industry-wide exemption to Grote Industries, LLC (Grote) to allow the addition of non-mandatory auxiliary lighting systems, *see* J.A. 159–66 (Grote Indus. Exemption Decision), Intellistop's request would permit commercial motor vehicles to alter mandatory lighting systems, potentially leading to "large numbers of trucks quickly [becoming] equipped with such

devices." FMCSA Decision, 87 Fed. Reg. at 61136; *see* Petitioner's Br. 14 ("The easy integration allows commercial vehicle fleet operators to install the Intellistop Module on a trailer in five minutes and without any special equipment."). The FMCSA thus emphasized not only the scope of Intellistop's requested exemption but also the potential for rapid adoption. Therefore the FMCSA's statement that "previous research [did] not address the potential safety benefits or risks of a lighting system that would replace rather than merely supplement a light required by an FMVSS," although incorrect, was not used as the basis of the FMCSA's decision. *See* FMCSA Decision, 87 Fed. Reg. at 61135–36.[3]

The FMCSA also sufficiently explained the difference between Intellistop's application and the exemptions it had previously approved. *See United Airlines*, 20 F.4th at 62. Granted, we have often held that "agencies must 'provide an adequate explanation to justify treating similarly situated parties differently,'" *Nasdaq Stock Mkt. LLC v. SEC*, 38 F.4th 1126, 1141 (D.C. Cir. 2022) (quoting *Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 776 (D.C. Cir.

---

[3] We note that the two NHTSA studies are not as analogous to Intellistop's module as Intellistop suggests. Both studies assessed the "attention getting" and responses to an experimentally designed pulsing brake light system on drivers in a parking lot or on a public roadway. The studies, however, replaced the motor vehicle's original brake light systems with a "test apparatus" capable of both pulsing and steady burning. *See generally* Nat'l Highway Traffic Safety Admin., Evaluation of Enhanced Brake Lights Using Surrogate Safety Metrics, Task 1 Report, DOT HS 811 127 (April 2009); Nat'l Highway Traffic Safety Admin., Evaluation of Enhanced Brake Lights Using Surrogate Safety Metrics, Task 2 & 3 Report, DOT HS 811 329 (June 2010). Neither study assessed the safety benefits or risks associated with the modification of original manufacturer's equipment in a manner similar to Intellistop's technology.

2005)), but an agency does not act arbitrarily if it treats dissimilar parties differently, *see Northpoint Tech., Ltd. v. FCC*, 414 F.3d 61, 74–75 (D.C. Cir. 2005) (agency reasonably distinguished parties based on technologies associated with their applications). The FMCSA explained that the "crucial distinction" between Intellistop and the previous exemption applicants was that only Intellistop's technology modified "the functionality of original equipment manufacturers' lamps, which are covered by an existing FMVSS." FMCSA Decision, 87 Fed. Reg. at 61136; *see also* 49 C.F.R. § 571.108. The FMCSA consulted with the NHTSA for this reason and concluded thereafter that it "does not currently have data to support a blanket exemption." FMCSA Decision, 87 Fed. Reg. at 61136. It explained that its reluctance was particularly significant given the breadth of the requested exemption. *See id.* ("Industry-wide exemptions are not the norm and FMCSA grants them only on a very limited basis[.]"); *Chadmoore Commc'ns, Inc. v. FCC*, 113 F.3d 235, 242 (D.C. Cir. 1997) (applicants were not "similarly situated" because petitioner's "application covered 2,312 stations in twenty-six states while the others' were limited, respectively, to eleven stations in four states and four stations in two states"). The FMCSA adequately explained that it treated Intellistop's application differently because Intellistop was the only exemption applicant that altered the vehicle's brake light system to function in a way that would not maintain steady-burning brake lights. *Compare* J.A. 17 (Intellistop Application), *with* J.A. 161 (Grote Indus. Exemption Decision), 120 (National Tank Truck Carriers Inc.'s Exemption Decision). Accordingly, we believe the FMCSA did not treat similarly situated exemption applicants differently because "the applicants were not 'similarly situated.'" *Chadmoore*, 113 F.3d at 242.

Finally, the FMCSA's concern that Intellistop's exemption would alter original equipment manufacturers'

lights covered by an FMVSS buttresses its conclusion that monitoring Intellistop's module would be more difficult than monitoring other exemptions. *See* FMCSA Decision, 87 Fed. Reg. at 61136; 49 C.F.R § 571.108 (Table I-a), (Table I-b) (requiring motor vehicles, including commercial motor vehicles, to maintain steady-burning brake lights). Under 49 U.S.C. § 30122, a "manufacturer, distributor, dealer, rental company, or motor vehicle repair business may not knowingly make inoperative any part of a device or element of design installed on or in a motor vehicle or motor vehicle equipment in compliance with an applicable motor vehicle safety standard." The FMCSA was concerned that it, and the NHTSA, would have difficulty monitoring whether the entities listed in section 30122 had in fact installed Intellistop's device in accordance with the NHTSA's FMVSS. *See* FMCSA Decision, 87 Fed. Reg. at 61136–37; *see also* 49 U.S.C. § 30112(a)(1) (prohibiting manufacture for sale or introduction of motor vehicle not in compliance with an FMVSS into interstate commerce). Because previous exemptions used a supplemental pulsing light while maintaining steady-burning brake lights, they did not present the monitoring complication both the FMCSA and the NHTSA feared could result from Intellistop's module. *See* FMCSA Decision, 87 Fed. Reg. at 61136.

For the foregoing reasons, the petition for review is denied.

*So ordered.*