# United States Tax Court

160 T.C. No. 5

THOMAS SHANDS,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 13499-16W.                    Filed March 8, 2023.

————

P filed a claim with the Internal Revenue Service (IRS) Whistleblower Office (WBO) requesting an I.R.C. § 7623(b) nondiscretionary award of 30% of the revenue collected from the 2011 Offshore Voluntary Disclosure Initiative (OVDI), in which the IRS offered lenient treatment for U.S. taxpayers that disclosed and paid back taxes on foreign accounts. The claim asserted that P's collaboration with federal agents in securing the highly publicized arrest and cooperation of Swiss banker Renzo Gadola led to widespread participation in OVDI.

The WBO denied P's claim, P appealed the denial in Tax Court, and the parties filed Cross Motions for Summary Judgment and Partial Summary Judgment as to whether the creation of OVDI or any taxpayer's participation in OVDI were I.R.C. § 7623(b)(1) related actions that entitle P to an award. R then moved to dismiss the case on the ground that the IRS did not proceed with an I.R.C. § 7623(b)(1) administrative or judicial action based on information brought to its attention by P.

*Held*: The Court lacks jurisdiction to review the WBO's denial because the IRS did not proceed with an administrative or judicial action by creating OVDI or by virtue of any taxpayer's participation in OVDI.

**Served 03/08/23**

_____

*Alexander R. Olama*, *William M. Sharp*, *James P. Dawson*, *Robert F. Katzberg*, and *Nicole M. Elliott*, for petitioner.

*Rachel G. Borden*, *Cathy Fung*, and *Anna L. Boning*, for respondent.

OPINION

GREAVES, *Judge*: The Internal Revenue Service (IRS) Whistleblower Office (WBO) denied petitioner's claim of a section 7623(b) nondiscretionary award for his alleged contribution to the success of the 2011 Offshore Voluntary Disclosure Initiative (OVDI), an IRS program that encouraged taxpayers to come into compliance with tax reporting obligations by voluntarily disclosing foreign accounts and other assets.[1]  Currently before us are respondent's Motion to Dismiss for Lack of Jurisdiction under Rules 40 and 53 and Motion for Summary Judgment under Rule 121, as well as petitioner's Cross Motion for Partial Summary Judgment under Rule 121 and discovery Motions under Rules 71(c), 72(b), and 104(b).

This Court lacks jurisdiction over a whistleblower case unless the IRS "*proceeds* with any administrative or judicial action . . . based on information brought to the [IRS's] attention" by the whistleblower.  *Li v. Commissioner*, 22 F.4th 1014, 1017 (D.C. Cir. 2022) (quoting section 7623(b)(1)).  We disagree with petitioner that the IRS proceeded with an administrative or judicial action by creating OVDI or by virtue of taxpayers' participation in OVDI.  Accordingly, we will grant respondent's Motion to Dismiss.

*Background*

The Court derives the following facts, other than the description of IRS voluntary disclosure programs, from the pleadings and Motion papers and from the administrative record, which respondent submitted

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

on January 26, 2018, as an Exhibit to his Motion in Limine. Petitioner resided in Mississippi when he petitioned this Court.

Petitioner filed Form 211, Application for Award for Original Information, with the WBO on or about November 29, 2010, seeking a whistleblower award for any amounts emanating from his cooperation with the Department of Justice (DOJ) and the IRS Criminal Investigation Division (CI) in their investigations of Swiss bankers Martin Lack and Renzo Gadola. IRS agents arrested Mr. Gadola in Miami, Florida, in November 2010, the day after he had a meeting with petitioner in which petitioner wore a recording device provided by CI. Mr. Gadola revealed to prosecutors how he and others helped U.S. taxpayers open Swiss bank accounts to conceal income and assets from the IRS. He eventually pleaded guilty to conspiring to defraud the United States in violation of 18 U.S.C. § 371. The DOJ announced Mr. Gadola's guilty plea in a December 2010 press release, and the story received media coverage in 2010 and 2011.

In February 2011 the IRS announced OVDI, its second offshore voluntary disclosure program and a counterpart to CI's longstanding practice of allowing taxpayers to avoid criminal prosecution by disclosing noncompliance. *See* IRS Large Business & International Division Memorandum, LB&I-1-09-1118-014, at 1 (Nov. 20, 2018); Offshore Voluntary Disclosure Program Frequently Asked Questions and Answers 2014, Q&A-3.[2] OVDI offered the same benefit, along with reduced penalties, for eligible taxpayers that voluntarily disclosed foreign accounts for tax years 2003–10. *See* 2011 OVDI Frequently Asked Questions and Answers, Q&A-4, -7, -9 (hereinafter OVDI Q&A). Taxpayers whose returns are under examination by the IRS or who are under investigation by CI could not participate in OVDI. *Id.* Q&A-14. Participating taxpayers had to provide information on offshore financial accounts, institutions, and facilitators, and pay back taxes, penalties, interest, and a "miscellaneous" penalty based on the highest aggregate balance in the foreign accounts over a specified period. *Id.* Q&A-7, -24.[3]

---

[2] The IRS offered the initial offshore voluntary disclosure program from March to October 2009. *See id.* OVDI was the second offshore voluntary disclosure program, and ran from February 8 to September 9, 2011. *Id.* A third offshore voluntary disclosure program began in 2012 and closed in 2018. *Id.* Q&A-1; Closing the 2014 Offshore Voluntary Disclosure Program Frequently Asked Questions and Answers.

[3] In general, all U.S. citizens, wherever they reside, and all resident alien individuals must pay federal income tax on worldwide taxable income. Treas. Reg. § 1.1-1(b). The same goes for domestic corporations, trusts, and estates. *See* Boris I.

The IRS reserved the right to conduct examinations with respect to OVDI disclosures, and a taxpayer that considered the OVDI penalty unacceptable could opt out of the program and have its case handled under the standard audit process. *Id.* Q&A-27, -51.

In a letter to the WBO dated June 18, 2012 (OVDI claim letter), petitioner claimed the IRS owed him a nondiscretionary whistleblower award under section 7623(b) "on the monies collected as a result of the February 2011 OVDI" (OVDI claim), which by that time totaled over $1 billion. Petitioner alleged that his undercover collaboration with federal agents brought about Mr. Gadola's arrest and cooperation, which in turn led to the success of OVDI. The letter quotes the prosecution's supplemental sentencing memorandum in Mr. Gadola's case, which asserts that Mr. Gadola's guilty plea and "the very public nature of his cooperation" with prosecutors were of "great benefit to the IRS," because they "spurred U.S. taxpayers to enter into the voluntary disclosure program." As compensation for providing information on Mr. Gadola, the same information referenced in his 2010 Form 211, petitioner sought a whistleblower award of 30% of the OVDI proceeds. Neither the OVDI claim letter nor petitioner's Motion papers claim a share of collections from associated enforcement actions, such as seizures of taxpayer assets or follow-up audits of OVDI participants, taxpayers who opted out of OVDI, or taxpayers not in compliance that the IRS discovered through OVDI disclosures.

The WBO processed the OVDI claim separately from petitioner's Form 211. WBO analyst Kenneth J. Chatham prepared the initial draft of an internal memorandum (Chatham memo) on June 6, 2013.[4] The final version of the Chatham memo, which is undated, recommends

---

Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates and Gifts* ¶ 65.3.1 (2022), Westlaw FTXIEG. Such taxpayers were required to report foreign-source income on their federal income tax returns for the tax years in the OVDI disclosure period. *See, e.g.*, Instructions to Form 1040, U.S. Individual Income Tax Return 19 (2010). Taxpayers with foreign accounts of aggregate value greater than $10,000 were also required to disclose such accounts on Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts (FBAR). 31 U.S.C. § 5314(a) (2000); 31 C.F.R. §§ 103.24, 103.27(c) (2010). Taxpayers not in compliance could face severe criminal and civil penalties, including civil fraud penalties, accuracy-related penalties, failure-to-file FBAR penalties, and failure-to-file and failure-to-pay additions to tax. *See* OVDI Q&A-5, -6.

[4] Although the administrative record refers to a "claim *rejection* memo" (emphasis added), the Chatham memo recommends that the WBO *deny* petitioner's claim, which it did. *See infra* Part II (discussing rejections and denials).

denying petitioner's claim for lack of a "related action" within the meaning of Treasury Regulation § 301.7623-2(c)(1).[5]

The WBO denied the OVDI claim in a letter dated May 25, 2016 (denial letter), explaining that "the IRS took no action based on the information [petitioner] provided with respect to [OVDI] or any of the taxpayers who participated in it," and that neither OVDI nor the participating taxpayers are "valid related actions to [petitioner's] Whistleblower claim." Petitioner appealed the denial in this Court on June 9, 2016, and argues that the creation of OVDI and certain taxpayers' participation in OVDI are section 7623(b)(1) related actions that entitle him to an award. Petitioner argues that we cannot resolve this case without granting his discovery requests, which he says could demonstrate that the IRS created OVDI because of increased demand for voluntary disclosure following the Gadola case, or that the WBO withheld the denial letter until the regulations under section 7623(b) better supported a denial.

On January 11, 2022, the U.S. Court of Appeals for the D.C. Circuit held in *Li v. Commissioner*, 22 F.4th at 1017, that the Tax Court lacks jurisdiction under section 7623(b) if the IRS has not proceeded with an administrative or judicial action based on information the whistleblower brought to its attention.[6] Respondent then moved to dismiss, arguing that the IRS did not proceed with an administrative or judicial action that would confer jurisdiction on this Court.

*Discussion*

I.      *Nondiscretionary Awards*

Section 7623 provides for both discretionary and mandatory awards to individuals (i.e., whistleblowers) who submit information about third parties that have underpaid their taxes or otherwise violated the internal revenue laws. Section 7623(a) authorizes discretionary awards, which are not subject to Tax Court review. By

---

[5] The Chatham memo refers to "Prop. Reg. 301.7623-2(d)(1)," which suggests the regulation may have remained in proposed form when Mr. Chatham completed the memorandum.

[6] The D.C. Circuit is the appellate venue for this case absent a stipulation by the parties. *See* § 7482(b)(1) (flush text); *Kasper v. Commissioner*, 150 T.C. 8, 11 n.1 (2018).

contrast, section 7623(b) authorizes nondiscretionary awards, discussed *infra*, which may be subject to our review.

If the IRS "proceeds with any administrative or judicial action described in subsection (a) based on information brought to [its] attention" by a whistleblower, section 7623(b)(1) provides that the whistleblower, subject to exceptions not relevant here, shall receive an award of 15% to 30% of the "collected proceeds . . . resulting from the action (including any related actions) or from any settlement in response to such action."[7]  Although the Code does not define "related actions," Treasury Regulation § 301.7623-2(c)(1) describes "related actions" as certain administrative or judicial actions against persons other than the ones the whistleblower identified.  The IRS must be able to identify the target of the action using the information the whistleblower provided, "without first having to use the information provided to identify any other person or having to independently obtain additional information." Treas. Reg. § 301.7623-2(c)(1)(iii).

II.      *Rejections and Denials*

The statutory provisions governing whistleblower awards are succinct, and the Department of the Treasury and the IRS have adopted regulations supplementing the statutory scheme.  *Rogers v. Commissioner*, 157 T.C. 20, 27 (2021).  The regulations establish two distinct types of so-called determinations that by definition result in no award: rejections and denials.  The WBO issues a rejection to a whistleblower whose claim fails to satisfy certain threshold requirements as to who may file a claim or what information the claim must include.  *See* Treas. Reg. §§ 301.7623-1(b)(2), (c)(4), -3(c)(7); *see also Lacey v. Commissioner*, 153 T.C. 146, 168 (2019) ("One of the WBO's options is indeed to 'reject' a claim without substantive consideration of its information and allegations beyond the face of the claim . . . .").  For example, Treasury Regulation § 301.7623-1(c)(1) requires the

---

[7] Section 7623(b)(1) refers to the "Secretary" rather than the IRS, and section 7701(a)(11)(B) defines "Secretary" as the Secretary of the Treasury or his delegate. The Secretary of the Treasury has delegated to the Commissioner responsibility for the administration and enforcement of the internal revenue laws.  Treas. Order 150-10 (Apr. 22, 1982).

Congress amended the statutory text in the sentence accompanying this note, effective for information provided for which a final determination for an award has not been made before February 9, 2018.  Bipartisan Budget Act of 2018, Pub. L. No. 115-123, § 41108(a)(2), (d), 132 Stat. 64, 158–59.  The amended text does not apply because the WBO denied the OVDI claim on May 25, 2016.

whistleblower to submit "specific and credible information that the whistleblower believes will lead to collected proceeds from one or more persons whom the whistleblower believes have failed to comply with the internal revenue laws." Failure to provide such information may result in a rejection. *See, e.g., Frantz v. Commissioner*, T.C. Memo. 2020-64, at \*7–8 (explaining that the WBO rejected a claim that failed to identify a tax issue).

When an eligible whistleblower files a conforming claim, the WBO issues a denial if "the IRS either did not proceed based on the information provided by the whistleblower," or "did not collect proceeds" despite proceeding based on the information. Treas. Reg. § 301.7623-3(c)(8). Accordingly, a denial is made after the WBO engages in some substantive consideration beyond the face of a claim. *Rogers*, 157 T.C. at 30.[8]

III. *Jurisdiction*

The Tax Court may exercise jurisdiction only to the extent authorized by Congress, *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985) (first citing section 7442; and then citing *Commissioner v. Gooch Milling & Elevator Co.*, 320 U.S. 418 (1943)), and a party invoking our jurisdiction bears the burden of proving that we have jurisdiction over the party's case, *see Fehrs v. Commissioner*, 65 T.C. 346, 348 (1975). We have jurisdiction to decide whether we have jurisdiction. *Snow v. Commissioner*, 142 T.C. 413, 419 (2014).

A. *"Administrative or Judicial Action" Prerequisite*

Section 7623(b)(4) grants the Tax Court jurisdiction to review any "determination regarding an award under paragraph (1)." Like Treasury Regulation § 301.7623-3(c), discussed *supra* Part II, the Tax Court interpreted "determination" to include rejections and denials. *See Lacey*, 153 T.C. at 163 n.19 ("[A] denial or rejection is a (negative) 'determination regarding an award', so the Tax Court has jurisdiction where, pursuant to the WBO's determination, the individual does *not* receive an award.").

---

[8] In the case of a rejection or a denial of a claim filed under section 7623(b), the WBO generally provides written notice to the whistleblower of the basis for its decision and, in the case of a rejection, inviting the whistleblower to submit comments or to perfect the claim. *See* Treas. Reg. §§ 301.7623-1(c)(4), -3(c)(7) and (8).

The D.C. Circuit disagreed, holding in *Li* that the Tax Court does not have jurisdiction to review a rejection of a whistleblower claim. *Li* reasoned that an award determination by the IRS arises only when the IRS "*proceeds* with any administrative or judicial action" based on information brought to the IRS's attention by the whistleblower. *Li v. Commissioner*, 22 F.4th at 1017 (quoting section 7623(b)(1)). A rejection "by nature means the IRS is not *proceeding* with an action," the Court continued, meaning "there is no award determination, negative or otherwise, and no jurisdiction for the Tax Court." *Id.*

Although petitioner received a denial rather than a rejection, Part II *supra* (second paragraph) explains that the IRS may issue a denial where the IRS "did not proceed [with an administrative or judicial action] based on the information provided by the whistleblower," and the denial letter explained that the WBO denied petitioner's claim because "the IRS took no action based on the information [petitioner] provided." To have jurisdiction over petitioner's appeal, we must hold that the IRS proceeded with an administrative or judicial action by creating OVDI or by virtue of taxpayers' participation in OVDI, the two administrative or judicial actions petitioner posits.

B.     *No Administrative or Judicial Action*

Although section 7623(b)(1) refers to an "administrative or judicial action described in subsection (a)," neither subsection (a) nor subsection (b) defines an "administrative action" or a "judicial action." Treasury Regulation § 301.7623-2(a) defines both terms for claims open as of August 12, 2014. *See* Treas. Reg. § 301.7623-2(f). An "administrative action" is defined as "all or a portion of an [IRS] civil or criminal proceeding against any person that may result in collected proceeds, . . . including, for example, an examination, a collection proceeding, a status determination proceeding, or a criminal investigation." *Id.* para. (a)(2). A "judicial action" is defined as "all or a portion of a proceeding against any person in any court that may result in collected proceeds." *Id.* subpara. (3).

This Court found section 7623(b)(1) ambiguous for its failure to define "administrative or judicial action," and accepted the regulatory definition of "administrative action" as within the Treasury's "ample scope" to define these terms. *See Lissack v. Commissioner*, 157 T.C. 63, 71–76 (2021) (citing *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984)). The same reasoning counsels deference to the regulatory definition of "judicial action." Furthermore, the Code

itself anticipates a definition of "action" similar to the regulation's by restricting nondiscretionary awards to proceeds of any action "*against* any taxpayer." *See* § 7623(b)(5)(A) (emphasis added); *see also Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1040 (D.C. Cir. 1986) ("Jurisdictional provisions in federal statutes are to be strictly construed.").

Neither of the purported administrative or judicial actions petitioner identifies fits the definitions in Treasury Regulation § 301.7623-2(a). By creating OVDI, the IRS did not undertake a "civil or criminal proceeding against any person" along the lines of the examples provided in the regulation, let alone a court proceeding. The program required voluntary disclosure of foreign accounts and assets, and excluded participation by taxpayers already under examination or investigation. We likewise reject petitioner's argument that inherently voluntary participation in OVDI *by a taxpayer* constitutes an administrative or judicial action *by the IRS*. This Court has recognized that a taxpayer's voluntary compliance absent an examination entailed no administrative action, even if IRS scrutiny prompted the taxpayer's compliance. *See Whistleblower 16158-14W v. Commissioner*, 148 T.C. 300, 304 (2017).

We therefore reject petitioner's argument that the creation of, and the participation by unidentified third-party taxpayers in, OVDI are "related actions." Assuming arguendo that the IRS proceeded with an administrative or judicial action against Mr. Gadola based on information petitioner brought to its attention, any related action the IRS took against other taxpayers must itself be an administrative or judicial action. *See* § 7623(b)(1) (granting an award of collected proceeds "resulting from the action (including any related actions)"); Treas. Reg. § 301.7623-2(a)(1) (defining an "action" as an administrative or judicial action); *id.* para. (c)(1) ("[T]he term related action means an *action . . . .*" (emphasis added)). Because neither of petitioner's proposed "actions" is an administrative or judicial action, neither can be a related action.

### C.    *Applicability of the Regulations*

Petitioner also challenges the process by which the WBO denied his claim. He submitted the OVDI claim in 2012, and the WBO sent the denial letter in 2016. He suggests that the "initial decision" to deny his claim occurred on June 6, 2013, the date of the first draft of the Chatham memo, and alleges that the WBO may have sought to shore up the legal

basis for its decision by withholding the denial letter until the definitions in Treasury Regulation § 301.7623-2 took effect in 2014.

Invoking the Administrative Procedure Act, *see* 5 U.S.C. § 706(2) (2018), petitioner asks us to "set aside" the denial as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," because the OVDI claim "must be evaluated based on the law applicable as of the date of respondent's initial decision to deny petitioner's claim." Petitioner argues that we must evaluate his claim by applying the plain meaning of the Code, and disregard regulations that took effect after the initial draft of the Chatham memo.

The D.C. Circuit encountered a similar argument from Bergerco Canada, a company that sought to collect a debt from an Iraqi entity on the eve of the Gulf War. When Iraq invaded Kuwait in August 1990, President Bush froze Iraqi property interests in the United States, including funds on deposit with the U.S. bank from which Bergerco would receive payment. *Bergerco Can. v. U.S. Treas. Dep't, Office of Foreign Assets Control*, 129 F.3d 189, 190–91 (D.C. Cir. 1997). On August 15, 1990, the Office of Foreign Assets Control (OFAC) announced regulatory criteria for the award of licenses for payment of blocked funds, and Bergerco promptly applied for a license. *Id.* at 191. OFAC then revised the regulation on October 18, adopting new criteria that Bergerco did not meet, and denied Bergerco's application on November 20 based on the new criteria. *Id.*

The D.C. Circuit rejected Bergerco's argument that application of the revised rule was impermissibly retroactive. *Id.* at 190. A regulation has retroactive effect, the Court explained, when it impairs rights a party had when it undertook some prior action. *See id.* at 193.[9] The key action in Bergerco's case was filing a license application, which did not confer protection from any subsequent rule-made variation in licensing standards. *See id.* at 194 (first citing *DIRECTV v. FCC*, 110 F.3d 816, 825–26 (D.C. Cir. 1997); and then citing *Chadmoore Commc'ns, Inc. v. FCC*, 113 F.3d 235, 240–41 (D.C. Cir. 1997)). The D.C. Circuit sustained

---

[9] The D.C. Circuit derived this principle from *Bowen v. Georgetown University Hospital*, 488 U.S. 204 (1988), and *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). *See Bergerco*, 129 F.3d at 193. The Court appeared to derive the injunction against retroactive regulations from 5 U.S.C. § 551(4) (1994), which defined a "rule" as "the whole or a part of an agency statement of general or particular applicability *and future effect*." *Bergerco*, 129 F.3d at 192 n.2 (emphasis added) (citing *Bowen*, 488 U.S. at 216 (Scalia, J., concurring)).

OFAC's use of the October 18 criteria, irrespective of the agency's motive in deferring action on Bergerco's application until November 20, and despite the fact that the August 15 regulation gave Bergerco "a very good chance of securing the license." *Id.* at 190.

The same reasoning permits us to apply the regulatory definition of "administrative or judicial action" adopted while petitioner's claim was pending. Petitioner cites no authority requiring the WBO or the Tax Court to ignore the regulation in reviewing claims filed before its effective date, and he identifies no other action he took that would entitle him to such review. We do not inquire into the IRS's reasons for issuing the regulation before the denial letter. *Cf. Lissack*, 157 T.C. at 63–68, 71–76 (applying the regulatory definition where the WBO may have had enough information to deny the claim nearly three years before its effective date).

IV.    *Conclusion*

The Court lacks jurisdiction to review the WBO denial of the OVDI claim because petitioner has the burden of proving jurisdiction, which requires that the IRS proceeded with an administrative or judicial action, and Treasury Regulation § 301.7623-2(a) does not encompass the purported administrative or judicial actions petitioner identifies. This holding moots petitioner's argument that either the creation of OVDI or taxpayers' participation in OVDI is a related action, which section 7623(b)(1) and Treasury Regulation § 301.7623-2(c)(1) define as a type of administrative or judicial action. Granting petitioner's request to discover why the IRS created OVDI would not change this result.

To reflect the foregoing,

*An order and order of dismissal for lack of jurisdiction will be entered.*